# LEWIS V. BOGY *vs.* JACOB D. SHOAB & CHAS. COLLINS.

By the act of 1825 regulating conveyances, a quit claim deed is not sufficient to transfer to the grantee the legal title subsequently acquired by the grantor. But where the grantor

| 13 | 365 |
| e170 | 51 |
| e172 | 16 |
| e172 | 17 |
| 172 | 18 |
| 172 | 19 |
| 172 | 22 |

makes a deed purporting to convey a fee simple *absolute*—that is an *indefeasible estate*, and at the time has *no title* whatever either legal or equitable, a subsequently acquired legal title by the grantor will by operation of the act pass to the grantee.

ERROR TO ST. LOUIS COURT OF COMMON PLEAS.

GEYER for plaintiff in error.

I. Whether it devolved on the defendant to prove that Pierre Chouteau, at the date of his deed to Strother, had no interest in the tract of land first described in that deed, or had previously sold and conveyed away all his interest therein, or the fact is assumed, and the burthen thrown on the defendant to disprove it, the deeds executed by Pierre Chouteau were before the jury, and the question submitted involved matters of law, which it was the province of the court and not of the jury to decide.

1st. In order to ascertain whether Chouteau had any interest in the land mentioned, it was necessary, first to determine the extent and legal effect of the confirmation as well as the location and boundaries, which are not fixed by the official survey. Ott vs. Soulard, 9 Mo. 581.

2nd. With reference to the question whether Chouteau has conveyed away all the land within the first tract described in the deed to Strother, it was necessary to determine the extent, legal effect and boundaries of these deeds—presenting mixed questions of law and fact.

The existence of a deed, is a fact for the jury; but its legal effect and operation, a question of law for the court. Jackson vs. Porter, 1 Paine 457.

What are the boundaries in a deed, is a question of law, the place of boundary, a question of fact. Doe vs. Paine, 4 Hawks 64; Cockerell vs. McQuinn, 4 Monroe 63; Hurley vs. Morgan, 1Dev. & Bal. 425; Hodges vs. Strong, 10 Vt. 247.

No principle is more clearly settled than that the construction of written evidence is exclusively with the court. Levy vs. Gadsby, 3 Cran. 180. And when extraneous evidence is admissible to aid the construction, the court is to decide the effect of such evidence, and what shall be the construction of certain facts as are proved. Ferole & Bigelow, 10 Mass. 379, 384.

It is error for a court to leave matters of law to a jury. Work vs. McClay, 2 Serg't. & R. 415; Coleman vs. Roberts, 1 Mo. Rep. 297; or to refer to them the construction of written instruments. Walsh vs. Deeser, 2 Binney 337; Reeve vs. Leonard, 1 Mass. 91; or to give an instruction which involves a question of law. Fugale et. al. vs. Carter, 6 Mo. R. 267; Newman vs. Lawless, ib. 279; or to refer to the jury a mixed question of law and fact. Plater vs. Scott, 6 Gill and J. 116; McRea vs. Scott & Rand 463.

Deeds are to be construed formally and as near the intent of the parties as possibly consistently with the rules of law. It is only where the intention is overruled by the law, that the intention will not be carried into effect. It is to be construed altogether and not by single clauses, and the whole shall have effect if possible—if not, a prior clause will be sustained in preference to a subsequent one—but the rule rejecting any clause is merely technical, and not to be acted upon when it can be avoided. Doubtful words are to be construed most strongly against the grantor—but regard must be had always to the intent of the parties collected from the whole context of the instrument—words are not to be added or .excluded, or a meaning given them contrary to the common understanding. No violent or forced construction ought to be made beyond the ordinary and fair meaning of the words employed, either to support or invalidate any instrument, but when words are repugnant to other parts of the deed and the general intent, will be rejected, and when they are mutually repugnant, the intent will prevail. 2 Hilliard on real property 322-3-4; Broome's legal maxims, 237-8, 249, 251, 254, 257.

Applying these well settled rules to the deed in question, it cannot be held that the tract of land first described and purported to be conveyed is bounded on the west by the common field lots. The first clause of description is, "a tract or parcel of land granted to said Pierre Chou-

teau in October, 1799, by Charles Dehault Delassus"—this undoubtedly comprehends all and not merely a part of the concession; the words which immediately follow, and to which alone the court gave effect, to wit: "beginning at Roy's line and running north to Labeaume's lai d and extending from the river to the common field lots, refers to the last antecedent, the concession; and purports to describe its boundaries and describes them falsely, the certainty appears in the first clause; and if the second is repugnant to it, it cannot stand, much less overrule the first clause; but all doubt is removed by what follows, expressly declaring it to be the intention to convey all the land contained within the concession except that which had before been conveyed, &c., &c. And to this plain and unequivocal expression of intention all other clauses must be conformed. 4 Creuse's Digest, 254-5-6-7; Jackson vs. Loomis, 18 John R. 81; Saunders vs. Betts, 7 Cow. 281; Bott vs. Burnell, 11 Mass. 163; 2 Hill on real property, 343-4.

If these clauses cannot stand together, those only are to be retained which best subserve the prevailing intention manifested on the face of the instrument. Gale vs. Lewis, 7 Ver. 507; Jackson vs. Sprague, Paine 494.

If a part of a deed prove inconsistent on being applied to the premises with the expressed intention of the parties, such part is to be rejected. Hull vs. Foster, 7 Vt. 100. Thus where a survey is referred to in a deed the grantee takes in conformity thereto, though the boundaries in the deed would exclude land included by the survey. Lush vs. Holland, 14 Mass. 149. The least certainty must yield to the greater certainty. While vs. Gray, 9 N. H. R. 126.

When there are several descriptions of the premises in a deed, such construction will be given to it, as will, if possible, satisfy all. Law vs. Hempstead, 10 Conn. R. 43.

In this case, it is clear that the only construction which will satisfy all the clauses is asserted in the first instruction prayed by the plaintiff, and refused, because the boundaries of the concession do include the land between the river and the common field lots, but the court by excluding the first and controlling clause, overrules the expressed intention of the parties and contracts the boundaries so as to include the smallest possible area, contrary to the well established rules of construction. 2 Hilliard on real property, 343; Hibbard vs. Hurlbul, 10 Ver't. 270.

The description of boundaries are always to be taken as strongly against the grantor as may be consistent with the apparent intention of the parties. Marshall vs. Neles, 8 Conn. 361, 369; Carroll vs. Norwood, 5 Har. & J. 163, Mars vs. Hobson, 9 Shepl. 321.

III The deed from Pierre Chouteau to Strother contains no exception of any thing granted. The clause, in the premises, "it being intended to convey to said George F. Strother, his heirs and assigns, all the land within the said concession, except that heretofore sold, &c. &c., is a part of the description of the land granted as explanatory of the intention of the parties, and cannot be rejected for repugnancy. This question depends not upon the words except, but upon the nature and legal effect of the clause construed, together with the other parts of the deed. Gale vs. Coburn, 18 Pick. 400. Here the words are merely explanatory of the thing granted, and entirely consistent with the preceding clauses and with the law. It does not affect the out boundaries, or take out of it any part which the grantor had a right to convey; it excepts nothing for himself; it is a mere declaration that the deed shall only pass, and was intended by the parties to pass only that which had not been previously conveyed by the grantor. When the above deed is taken together, as it must be, it is a conveyance of such parcels within the concessions as are not conveyed by previous deeds. Wade vs. Howard, 6 Pick. 499, 500; Moore vs. Fletcher, Shepl. 63; Hill'd. on Real property, 352.

If the clause in question, or something equivalent, had not been contained in the deed, the grantor and grantee would have been subject, each of them, to a fine not exceeding five thousand dollars, and imprisonment not exceeding five years, and they would have been moreover liable for double damages to any party injured by the deed. Rev. Code, 1825, p. 290, sec. 40.

The clause, as it stands, was consistent with the law, and the expressed intention of the

parties, and no construction will be allowed which would resolve the instrument into a viola- tion of law.

Even when a dead admits of two constructions, one conformable and the other contrary to law, the former must be preferred. 2 Hill'd. on Real property, 325, 4 Creuse Dig. 259.

So also a deed will be consistent, if possible to avoid forfeiture. Jackson vs. Topping, 1 Wend. 388.

Again, in the construction of a grant, the court will take into consideration the attending circumstances, the situation of the parties, the state of the country, and the thing granted, in order to ascertain the intent of the parties. Adams vs. Frothingham, 3 Mass. 352; Leland vs. Stone, 10 do. 459; Nicholas vs. Lewis, 15 Conn. 137.

IV. The grant is not to be restricted or the extent of it enlarged by constructed. Hill'd. on real property, vol. 2, p. 324; 4 Creuse, 258. The instruction, therefore, which refers to the jury the question whether Pierre Chouteau had previously sold and conveyed away all the lands within the concession, without reference to any deeds, is erroneous. The court ought first to have determined what the boundaries of each deed were, and then refer to the jury to ascertain the place of boundary according to the construction of the court, in order to determine whether the deeds comprehended all the lands within the concession. Jackson vs. Porter, 1 Paine, 457 ; Doe vs. Paine, 4 Hawks, 64; Hodges vs. Strong, 10 Vt. 247 ; Levy vs. Gadsby, 3 Cran. 180 ; Fowler vs. Bigelow, 10 Mass. 379, 384.

V. The effect of the instruction is to divest the title of Chouteau in the whole tract by a deed which conveys a small part to A. P. Chouteau. The residue belongs to no person in partic- ular. But neither Pierre nor Auguste P. Chouteau can ever acquire a title except under Stro- ther ; though every body else may acquire from others a better title than Strothers, and yet, as it seems, if the instructions are correct, Pierre Chouteau could not, notwithstanding his dec- laration, convey a good title, not by direct conveyance, but by exception from a grant.

VI. It is the well settled doctrine that a deed cannot operate as an estoppel, unless it con- tains covenants of general warranty, so far at least as the passing of subsequently acquired title is concerned. Comstock vs. Smith, 13 Pick. 116 ; Dart vs. Dart, 7 Conn. 250 ; McCrack- en vs. Wright, 14 Johns. Rep. 193 ; Jackson vs. Hubble, 1 Cow. 613 ; Jackson vs. Winslow, 9 Cow. 13 ; Jackson vs. Peck, 4 Wend. 400 ; Brown vs. Jackson, 3 Wheat. 449 ; Kensman vs. Loomis, 11 Ohio, 475 ; Allen vs. Sayward, 5 Greenl. 227 ; Walter vs. hrs. of Gratz, 1 Wheat. 290 ; Jackson vs. Bradford, 4 Wend. 622 ; Davis vs. Hayden, 7 Mass. 257 ; Blanchard vs. Brooks, 12 Pick. 66 ; Jackson vs. Walder, 13 Wend. 178 ; 2 Smith's Lead Ca. 515 ; Doe vs. Scarborough, 3 Ad. & Ellis, 2.

VII. Estoppels are not favored. Leicester vs. Reboheth, 1 Mass. 180; Bridgwater vs. Dartmouth, ib, 473; Owen vs. Bartholomew, 9 Pick. 520 ; Mach vs. Dubruiel, 9 Mo. R. 477 ; 11 do. 119. It is against the policy of our law that estates in land should pass oth- erwise than by deed.

VIII. The first, fourth and fifth instructions are not only objectionable for the reasons sta- ted, but because they referred to the jury an enquiry without a particle of evidence of the facts.

There is a total absence of evidence tending to show any one of the facts referred to the jury by the three instructions mentioned.

IX. When there are no monuments the land must be bounded by the course and distance named in the grant or deed. McIvon vs. Walker, 4 Wheat. 444; Chenoweth vs. Haskills lessee, 3 Peters, 96 ; Cherry vs. Slade, 3 Murphy, 82 ; Hammond vs. Ridgley, 5 Har. & J. 254 ; Howard vs. Moab, 2 do. 267.

So when monuments that are erected are gone, and their places are not found, the course and distance being named in the deed. Prester vs. Bowman, 2nd Bibb, 493.

So where monuments are named, but are not distinguishable from others of the same kind. Chenoweth vs. Haskell's lessee, 3 Peters, 96.

## Bogy for self.

1. Chouteau intended to sell to Strother all the interest he had in his concession. Where the intention of the parties can be discovered by the deed, the court will carry out that intention. Min. Digest, p. 212 ; 7 Watts & Sergent Rep. p. 192; Gibson's opinion, Willis Rep. p. 332, 333; Willis' opinion, 1 Shep'd. Touchstone, (vol. 28, law library) top page 170. 171, 172, (note 79, at page 172,) 175. The remarks of chief justice Willis, in the case of Parkhurst vs. Smith. Comyer's gives the rules of construction to be found in top page, 175, 176, 178, 179, of Shep. Touchstone; 16 John. Rep. p. 172.

2. The construction should be on the entire deed, and each construction should be given, that if possible every part of the deed may be operative. Troop vs. Blodget 16 John. Rep. 172; Shep. Touchstone 86, 87, 88.

3. The construction of the deed should be reasonable. Shep. Touchstone, 86, 87, and taken more strongly against the grantor. Shep. Touchstone 87.

4. A boundary in a deed may be rejected, when it is manifest from all the circumstances of the case, that it was inadvertently inserted, and that a tract of land with different boundaries was bargained for, and intended to be conveyed. 17 Mass. 207, Davis vs. Rainsford.

Thus, if a lot of land be granted, and specifying its number in certain patent and refering to a map on which it is laid down, the whole lot will pass, although described in the deed, to contain a less number of acres than it actually does. Jackson vs. Diffendorf, 1 Caine's Rep. page 493; 7 John. Rep. 217.

## Spalding for defendant.

I. The exception in the deed of Pierre Chouteau and wife to A. P. Chouteau, (being of all that he had personally conveyed) was *void*, if he had previously conveyed the whole of the land, and the deed was in effect, the same as if it contained no exception. In other words, if the exception in a deed, be of the whole that is conveyed, then the exception is void.

Shep. Touchstone, 77, 78. "An exception must be of a part of the thing granted and of part only; and page 79; or if the exception be such as is repugnant to the grant, or doth utterly subvert it, and take away the fruit of it, is void." 28 Law Library; 4 Com. Digest; 167 title "Fait," E. 5 Exception. So an exception of the whole contained in a grant shall be void, as if it releases all his right to such land, except that which he has by descent, when he has the whole by descent, the exception is contradictory and void." 3 Wend.; Woods Conveyancing 329; Cro. El. p. 6; 4 Cruise Dig. 327 ; 7 Watts & Sergt. 184; Shoenbergh vs. Lyon to same effect.

2 Hilliard 352; 3 John. 375; 8 Conn. 369; 8 New Ham. 96, that an exception to a deed is to be taken most favorably to the grantee in case of uncertainty. 4 Com. Dig. Fait E. 8; 28 Law Libr. 160 (1 Shep. Touchstone 79) if exception be of something not belonging to grantor, it is void.

And in such case, there being a deed from P. Chouteau to Strother for the land, and then a deed from A. P. Chouteau to P. Chouteau, for same, the title enured to benefit of Strother, under the act then in force. Rev. Code 1835 p. 119, sec. 3; Rev. Code 1825 p. 219, sec. 6. There is a warranty in Strother's deed, which operates estoppel at common law.

II. The agreement of Bogy and wife with P. Chouteau, recites that the title to the land in question was reconveyed to P. Chouteau by A. P. Chouteau and wife. This recital operates an estoppel, as against Bogy.

1st. Because it is his admission under seal on an instrument made between him and P. Chouteau, under whom all the parties claim.

2nd. Because it is the formal recital of a fact, not the statement of a boundary or matter of

47

description. 2 Smith's Lead. Cases 450 top, 456 side page in Law Libr. 42; 1 Greanleaf Ev. 25; 1 Stark. Ev. 302; 9 Wend. 209; Dyer 196 A.; 2 Smith's Lead. cases 463, American note; 4 Peters 1 to 88, Carver vs. Jackson.

3rd. This deed although made after the suit was commenced, recites that the title was conveyed by A. P. Chouteau, and wife, to P. Chouteau, before P. Chouteau made his deed to Bogy; such is the true meaning of the language.

III. The instrument executed by Bogy to P. Chouteau, may be considered as a bargain, and sale, in its nature, raising a use in favor of P. Chouteau, for valuable consideration, which was executed by the act of Rev. code of 1845, page 218.

IV. The deed of Chouteau to Bogy, and deed of Bogy declaring use, are to be taken together as one; and thus amount to a conveyance by Chouteau reserving power to decline use, and to a declaration of that use in favor of the heirs of A. P. Chouteau, which is executed by the statute aforesaid. 18 Law Libr. 81 (Watkin's on conveyancing 239.) "This assurance, (bargain and sale) admits of future uses. If the use be future, the fee will remain in the bargainor till it can vest in the bargainee."

Ibid. 55. (Watkin's 161) where land is conveyed to a person to such uses as A. B. shall appoint, upon the appointment the statute will execute the use, so that the legal estate which had been suspended, will not vest in the appointee.

22 Law Libr. 52, (Lew. on Trusts p. 102) shows the legal estate is transferred to the *cestui que trust*, or use, if the trustee has no agency imposed on him, or nothing to do, &c. but merely to permit *cestui que trust*, to receive rents or enjoy property &c.

21 Law Libr. 26 (Burton on real property 60, paragraph 169, 170) declaration of uses may be made before or after, or at the same time with original deed or assurance, (see paragraph 171, 172, &c.)

4 Wend. Conveyance in trust for a church, which being afterwards incorporated, the statute transposed the estate to the corporation.

Sugden on powers p. 11, sec. 3, first and second paragraphs as to powers, and that when executed, the statute transferred the legal estate to the appointee.

V. If the title passed from Bogy to P. Chouteau by means of bargain and sale, then it enured under our statute, to Strother and his representatives by means of the deed of P. Chouteau to Strother; and if passed under the appointment, it then vested in A. P. Chouteau's heirs, and of course, it was out of Bogy. Rev. code of 1825, p. 217, sec. 6; Rev. code of 1835, p. 119, sec. 3; Rev. code of 1845, p. 219, sec. 3.

The words used in the first act, are as extensive as those in the subsequent revision, and comprehend all cases, and are not to be confined to confirmations and New Madrid certificates. The word "confirmed," also does not apply to New Madrid titles.

VI. By the *Spanish law*, a deed or conveyance to the husband vested the title in him, and his deed alone passed the complete title to a third person, though his wife did not join. *The husband is the head of the community or partnership, and can alienate the property*, real and personal, acquired during the marriage.

3 Febero 164, No. 26, p. 173, No. 45, 46, 47, 48. Note at page 164.

3 Val. Recop. p. 426, law 5 (lib. 10 law 5 title 4,) 5 Mart. Rep. (N. S.) 54; 10 Louis Rep. 146; 6 Louisiana 459; 7 Louisiana 222; 9 Louisiana 135, 453.

The deed to *A. P. Chouteau* by Pierre Chouteau, contained the name of only *one grantee*, that is *A. P. Chouteau*, and upon its face, and by its terms, purports to convey to *one grantee only*; of course it must vest title in him only.

VII. That admission in deeds are evidence against parties and privies and entitled to great weight. See Greenl. Ev. p. 220, sec. 189, & p. 245, sec. 211.

HAIGHT for defendants.

The deed from Pierre Chouteau to George F. Strother conveyed to him the premises in fee

simple absolute or purported so to do. The exception being repugnant to the grant is void.— An exception in a deed to be good must be a part of the thing granted and not the whole of it. Wood's conveyancing Vol. 1, page 329; Shephard's Touchstone, 77-9; Croke Elizabeth 6 244 ; Creuse Digest, Vol. 4th, recognized in 3d Wendell, Case vs. Haight; Watts & Sergeant's Report Vol. 7, 184.

The exception in this case was of the whole grant and is therefore void. The fact has been found by the jury and the evidence on that point is most satisfactory.

The reconveyance by A. P. Chouteau to P. Chouteau, his father, of the 15th March, 1838, invested Pierre Chouteau with the title of A. P. Chouteau, and by virtue of the statute laws of 1825, page 217, it immediately passed to the grantees of Strother.

Where in a revision of the laws there is not a clear and undoubted intention to change, the old and new will receive the same construction.

An estoppel is a solemn admission by some act or deed which the policy of the law will not permit the party estopped to gainsay or deny.

Greenleaf's evidence, Vol, 1st, page 26, sec. 22.

The recital operates as an estoppel working on the interest in the land if it be a conveyance and binding both parties and privies, privies in blood, privies in estate, privies in law. For an illustration of this principle the following authorities are referred to. 9 Wendell, 209; Carver vs. Jackson, 4 Peters Rep. 83 to 88. Opinion of Story, J.

Chancellor Kent says, "The estoppel works an interest in the land, an ejectment is maintainable on a mere estoppel." 4th Kent's Com. 98, 5th edition; see also Smith's leading cases Vol. 2, 456 (marginal page) note, law library. Bowman vs. Taylor, 2nd Adolph & Ellison, 279; 29th Vol. of Com. law page 90th, and other cases cited in the note referred to; 2d Serg't. & R. 515; Goodtitle vs. Bailey, Cowper 597; Rainsford vs. Smith, 2 Dyer 196 (a); 7 J. J. Marshall, 12 Coxe 172, 432; Stone vs, Uye, 7th Com. Rep. 214; Fairbank vs. Williamson, 7th Greenleaf, 96; Sayles vs. Smith, 12 Wendell 57; 15 Metcalf, 180.

The recital which is to operate as an estoppel must be of a particular thing and not a generality to be done. Croke Eliz. 762; Shelby vs. Wright, Willes 9. Note to Smith's leading cases supra; Rainsford vs. Smith, 2d Dyer, 196 (a); 2 Saunders, 215, note 2; 1 Greenleaf's evidence page 32, note 1.

When the deed refers to a generality the party may aver that the matter referred to does not exist but where it refers to a precise thing as in existence at the time of the deed executed the party is estopped from denying its existence. Yelverton's Rep. 227, note 1.

What is stated by way of description in a bond may be denied by the obligor. Ibid Viner's abridgement, estoppel 2. So also in a lease or deed, Green vs. Skipwith, 1 Strange 610; 12 Vermont R. 39; see also Greenleaf on evidence, sec. 26, page 33.

That whatever may be the nature or form of the conveyance if the substance of the deeds is to vest the entire beneficial use in one person such person will be clothed with the legal estate though the conveyance should purport to convey the formal title to another. Such we understand to be the effect, object and intent of the Statute of uses as originally passed in England and adopted here, or rather a similar and nearly the same enactment. Revised laws page 218, sec. 1, of chap. 32, entitled "an act regulating conveyances."

The language of the statute is clear and unequivocal, and if now to be construed for the first time would hardly admit of any doubt. But this is a case of a simple trust and was always executed under the English statute of 27, Henry VIII, whether designated as an use or trust. Levin on trusts 102, law library, vol. 24, page 52, and cases cited by him; Sanderson uses and trusts, 117.

The deed or agreement of 17th Sept. 1846, is a bargain and sale and under the statute vests the legal title in Pierre Chouteau and consequently in the defendant. Thather vs Omans and another, 3 Pick. 521. The ministers of the Dutch church of Schenectady vs. Veedar, 4 Wendell, 494; 18 John, 78; Jackson vs. Root, 10 John. R. 456; Same vs. Fish, 3d vol. R. S., N. Y. App'x. 581; 2nd vol. 722, sec. 47; 21 Wendell, Welch vs. Allen; Burton on real property 38;

Rev. laws Mo. 1845, 218; Shepherd's Touchstone, 502-6; Brief history of the statute of uses, 9 Cowen 521, per. Stebbins' Son. See particularly case in 3d Pickering.

NAPTON, J., delivered the opinion of the court.

The first question to be determined in this case is, whether the exceptions contained in Chouteau's deed to Strother were as large as the grant itself, whether the land previously sold by Chouteau embraced the entire tract conveyed to Strother. If this be determined in the negative, all the other points in the case become immaterial.

It is contended on the one side, that Strother's deed embraced the whole original concession and as that concession extended into the field lots some eighteen acres, there was at least this much for the deed to operate on, admitting that all the land confirmed, and all outside of the field lots had been conveyed by Chouteau previously to his deed to Strother. If this be denied, it is further contended, that the previous deeds of Chouteau did not cover all the land within the concession, but that there were narrow slips of ground still belonging to Chouteau, and not embraced in his previous conveyances, which will pass to Strother under his deed. On the other hand it is urged that a fair construction of Chouteau's deed must confine the limits of the land granted by that deed to the eastern boundary of the field lots, that line being specified in the deed as the western boundary of the grant, and Mr. Chouteau having abandoned all claim before the board of commissioners to any portion of his original concession lying within the field lots. It is also urged on this side, that the terms of Chouteau's deeds to Lewis, Carr, and others previous to his deed to Strother clearly embrace all the land lying within the confirmed part of his concession.

The concession to Chouteau was made in 1799 and was described as running on the heights of the Mississippi at the distance of six arpens from the river. It was surveyed in 1803 and included about 133 arpens. In 1809 when this claim was before the board of commissioners, and when Chouteau had previously conveyed a portion of it in the southwest corner to Mr. Lewis, he appeared before the board and relinquished that part of the claim which interfered with the field lots, being then supposed to be about 39 arpens, leaving off the original concession about 93 arpens. The claim in this condition was confirmed. Chouteau by his deed to Strother in 1826 bargained and sold the following tracts of land granted to said Pierre Chouteau by Charles D. Delassus; *"beginning at Roy's line north to Labeaume's south line and extending from*

*the river to the common field lots west, it being intended hereby to convey to the said George F. Strother, his heirs and assigns, all the land contained within said concession, except that heretofore sold, by the said Pierre Chouteau, according to his said several contracts, to be limited by the notes and bonds marked and fixed by the intention of the said parties at the period of contracting.*"

In Chouteau's deed of 1818 to A. P. Chouteau the general description of the concession, a portion of which only was included in that deed, was couched in nearly the same language. That deed conveyed a parcel of land, "situate at a place called La Grange de terre, containing 20 arpens in superficie, and bounded on the south by land which the grantors had sold to W. C. Carr, east by the river Mississippi, *west by the* 40 *arpen lots,* and north by land which the said P. Chouteau acquired of Joseph Brazeau and the ditch of the land formerly belonging to Louis Labeaume, and in which aforesaid 20 arpens or more, if it shall be found there is included, all the mound called La Grange de terre, which parcel of land above sold, being the part the most north and *the residue of the concession,* which was granted to said Chouteau by Mr. C. D. Delassus &c."

My opinion is, that Mr. Chouteau did not intend to convey by his deed to Strother any part of his original concession included in the field lots, and this opinion is founded upon various reasons which I shall merely enumerate.

He had abandoned all title to any portion of the common field lots before the board of commissioners, and he could not have entertained the idea, that notwithstanding such relinquishment, he still had any pretensions there.

The word "concession" in the deed is evidently not used in its strict or literal meaning, but as an equivalent for conformation, or the concession as modified by the action of the board of commissioners. In this restricted sense, the term concession, is used in all the deeds relating to this land. In the deed to his son, A. P. Chouteau, he bounds his concession as he does in the deed to Strother by the forty arpen lots and yet he calls it the residue of his concession, which it certainly was not, if by the term concession he meant a part of the forty arpen lots originally included within it.

A critical examination of the language of the deed leads to the same conclusion. He conveys the following tract of land granted to said Pierre Chouteau by Delassus, the spanish commandant, namely: A tract "beginning at Roy's line north to Labeaume's south line and extending

from the river to the common field lots west." Here is a full and complete description of the land, a description not embracing the original concession but the concession as modified by the board and as claimed by Chouteau. There follows not any further a more minute description of the land, but an explanation of the intentions of the parties as to what portions of this land were to be conveyed. "It being intended hereby to convey to the said G. F. Strother, his heirs and assigns all the land within said concession, except" &c. What concession? surely the one just before described, and which was bounded on the west by the common field lots.

Again, would it not argue most remarkable remissness, to self interest, nay, absolute fatuity, to suppose that Strother would take a deed for a chance title in the common fields, and yet in that very deed in terms exclude the common fields from his grant, by making it his western boundary?

To sustain the plaintiff's proposition we must reject the descriptive portion of the deed, in which the common field lots is specified expressly as the western boundary of the land granted to Strother.

But the deed to A. P. Chouteau would seem to settle this question. It is immaterial in what light we view the term "concession" or how we regard the defined limits "extending from the river to the common field lots," for both the said concession and the western boundary of the common field lots are to be found in both deeds and which ever construction we choose must prevail in both.

It is said, however, that the previous conveyances of Chouteau, to wit, those to Lewis, Lisa, Carr and A. P. Chouteau did not convey all the concession outside of the common field lots or at all events that whether they did or not was a question of fact which the instructions of the court did not leave open for the consideration of the jury. There is certainly much difficulty in locating these several deeds, there may be disputes relative to this matter not necessary to be particularly investigated here, but a comparison of the deeds with the maps or plats has satisfied me, that there can be no serious difficulty except in relation to Carr's extension west. For however uncertain Lewis' beginning point may be, his land certainly runs with Chouteau's south and west lines, how far is not material. It takes in the southwest corner of his tract. Then Lisa and Bates are bounded by him, and Carr by them, and A. P. Chouteau by Carr on the south. Now Carr's tract is rendered indefinite by reason of its calling only for six arpens in depth, when the fact is, as we

learn from the surveys in evidence, that on his north end there is a little more than 'six arpens between the river and the common field lots.

Without undertaking to suggest any solution of this difficulty, I think Mr. Chouteau's deed to his son conclusive on this point against the plaintiff, who, according to his own showing, is a naked trustee for Chouteau's daughter-in-law and grand children.

This deed, which was made in 1818, describes the land conveyed therein as "the residue" of the concession. This ought to conclude the grantor. He certainly did not consider that there were any vacancies in his concession, after his deeds to Lewis, Lisa, Bates and Carr and his son, for in the last deed he expressly declares the tract thereby conveyed to be *"the part most north and the residue of the concession &c."* In whatever sense this term *concession* be used, whether as embracing the entire grant from the spanish commandant or that part of it which had been confirmed, it is equally clear that the result is not charged. The same word is used in the grantor's deed to Strother and with the same meaning.

The supposition then, that Strother was dealing in chances, that he was buying a doubtful title in the common fields or taking the [risk in gaps in the titles outside of these fields, is wholly repelled not only by the strongest language in the deed itself, but by all the circumstances preceding, attending and following the conveyance.

In 1822 a contract was executed between Chouteau and Strother and reduced to writing, by which Chouteau agreed to convey to Strother "a tract or parcel of land, lying upon the Mississippi, extending upon the bank of the river from the tract of land sold by the said Chouteau to W. C. Carr to a tract formerly sold by Labeaume to W. Christy, according to conveyance from Braylen to Labeaume, and running with each of their lines back to embrace the big mound. The said tract of land to contain at least 30 arpens, with covenant against incumbrances and all other reasonable covenants." The tract here described is obviously the same which Chouteau had conveyed to his son in 1818 by a deed which was then standing on the records of St. Louis county. What becomes then of the argument derived from our statute, which prohibited under penalty of fine and imprisonment, the conveyance of a title previously conveyed to another? If this statute was to prevent Chouteau from attempting a conveyance of this land, in 1826, because of his previous conveyance in 1818, why did it not have that effect in 1822, when beyond all controversy he treated it as his own and executed a formal contract for its conveyance?

Chouteau undoubtedly agreed to convey this land in 1822 to Strother. He did attempt to convey some portion of the concession in 1826, a survey of the land so conveyed was made in 1826 in his presence and under his directions and embraced the very tract previously conveyed to his son; possession was given to Strother, who sold the land to a company, and this company has been in possession for nearly twenty years. And although Mr. Chouteau obtained a reconveyance of this land from his son in 1838, that deed was not placed upon record until 1845, on the same day that another deed from himself to the plaintiffs, Bogy and others from the wife of A. P. Chouteau to Bogy were recorded, this action of ejectment was brought about a month thereafter.

I am aware, that these circumstances, supposing them to be incapable of contradiction by counter proofs, will avail Strother's assignees nothing in an action of ejectment. They are merely alluded to as rebutting the positions which were strongly insisted on, that Strother's deed was the result of a speculation in the common fields. On this point, I am fully satisfied. I entertain no doubt but that Strother thought he was buying and Chouteau supposed himself to be conveying, the identical tract of land which Chouteau had conveyed in 1818 to his son. Why such a purchase and conveyance should be made with an outstanding deed in another or why it should be couched in such an equivocal deed it is useless to enquire. Suppositions might be made entirely consistent with good faith on both sides, but I shall not stop to examine them. For some cause, Chouteau considered himself at liberty to treat this title as his own, from 1822 to 1826.

He contracted to convey it in 1822, and attempted to convey it in 1826. The only question is, did he succeed? Have Strother's assignees the legal title? For if they have not, it matters not in this form of action, what may be their equitable rights.

The deed from Chouteau to Strother, after purporting to convey the whole concession from the river to the common fields, and from Labeaume's ditch to Roy's north line, excepted from its operations all the land in the concession previously granted by Chouteau, and it turns out, that all the land had been granted; that in addition to the grants to Lewis, Bates, Lisa and Carr, there was a deed on record, conveying the residue to his son A. P. Chouteau. Was Strother's deed then waste paper, or was it operative to transfer the title which Chouteau obtained from his son in 1838?

The doctrine of exceptions about which a good deal has been said at the bar, affords no decisive answer to this question. If a man conveys

a tract of land, excepting such parts as he has previously conveyed, the exception amounts to nothing, for he cannot convey that which does not belong to him. And if the parts excepted embrace all the land, the deed must stand merely as a conveyance of a tract of land to which the grantor has no title. No question can arise on such a deed, except in the event of an after acquired title by the grantor. That is the decisive question in this case.

But before examining this question, it is proper to explain more fully, our views concerning the common law doctrine of exceptions in a deed, upon which a good deal of stress has been laid in the argument. The learning on this subject is to be found in Touchstone. In that work an exception is defined to be "a clause in a deed, whereby, the feoffor, donor, grantor, lessor, &c., doth except somewhat out of that which he had granted before by the deed." It is, therefore, laid down, that an exception to be valid, must be part of the thing only, and not all, and it must be of such a thing as he that doth except may have and doth properly belong to him. "If the exception extends to the whole thing granted or demised, it is void:" This maxim seems to rest upon the case of Dorrell vs. Collins, ( Cro. Eliz. 6,) where the master and scholars of the college of Singfort, were seized of the manor of Hadley, and let all their lands in Lambhurst, except the manor of Hadley, and the master and scholars had no other lands in Lambhurst, except the manor of Hadley, and the court held that the manor passed.

It may appear a little absurd to put such a construction on a deed; for the leading rule in the construction of all contracts, is to ascertain the intention of the parties, and to say that a grantor intends to part with that which in his deed he expressly says, he does not intend to convey, but means to reserve, would seem to run counter to this rule. But a closer observation will satisfy us that this rule of the common law, for the construction of exceptions, like most of the others which have been engrafted in that system, is founded on common sense and common honesty. There is evidently, in such a deed as that referred to, in Dorrell vs. Collins, a manifestation of two intents, directly conflicting, which must either annihilate the conveyance, and make it a nullity, or one of which must yield to the other. There are other rules, which then apply to make the deed stand. The first clause in a deed and the last in a will must govern, and a deed must be so construed as to stand, rather than to fall. The grantor intends to part with something. The deed is not made, and a consideration advanced for nothing. It is to be construed most strongly against the grantor. If obscurity has arisen, it is but right

48

that he should bear the loss. As he placed the matter in doubt by in-dicating two contradictory intents, both of which cannot stand, all these rules or principles alluded to above, require that the deed shall stand—that something shall pass, and as we cannot separate the excepted portions where they cover the whole grant, the whole land passes.

It is plain that Chouteau's deed to Strother, does not contain any such exception as is referred to, in the case of Dorrell vs. Collins. Chouteau does not reserve any thing to himself. He merely refers to his previous grants, and declares it not to be his intention to pass by that deed, what he had previously sold to others. This would have been the effect of the deed, had no such declaration been made. The exception is nugatory for any purpose, unless it be to prevent the application of the common law or our statutes, in effecting a transmission of the title, he subsequently acquired from A. P. Chouteau, and of this we will now enquire.

It must be admitted, that a very great diversity of opinion has existed, both in adjudged cases and in the treaties of law writers, as to what description of conveyance will pass on after acquired title. Nor are they much better agreed as to the principles upon which such a transmission of title is effected, in cases when all acknowledge the subsequently acquired title passes.

By some it is contended, that no conveyance except the common law feoffments or fine and recovery, could have the effect of passing a legal estate, which the grantor had not at the time, and that neither a general warranty, nor any mere estoppel could affect the legal title.

On the other hand, it is maintained by the decisions in New York and Pennsylvania, and in all the New England states, that a conveyance under the statute of uses, a bargain and sale, if accompanied with a covenant of general warranty, will operate upon a title which the bargainor did not have at the time of the conveyance. The new title is supposed to enure by way of estoppel, to use of the grantee and his assigns. Although nothing passes by the deed, as the grantor had nothing, yet as the grantee may recover the value of the land upon his covenants, he is estopped from using his subsequently acquired title. At the same time it is conceded, that where the covenant is restricted to a mere warranty of the title granted or released, no such consequence follows : where the grantor does not undertake to convey an indefeasible estate, but only such title as he has, and agrees to warrant it only against all claims derived from himself, he is understood to refer to existing claims or incumbrances, and not to any title he might afterwards derive from a stran-

ger. White vs. Patten, 24 Pick. 324; Comstock vs. Smith, 13 Pick. 116; Jackson vs. Bradford, 4 Wend. 622; Jackson vs. Hubble, 6 Cowen 613; Dart vs. Dart, 7 Conn. 256; Chew vs. Barnett, 11 Sergt. and R. 389.

It is not material in this case that the effect of a general warranty in a deed should be determined, as there was no such covenant in Chouteau's deed. We have a statute, however, in relation to conveyances, which is designed to have a bearing on this subject.

The Revised Code of 1825, contains this provision: "If any person shall sell and convey to another by deed, a conveyance, purporting to convey an estate in fee simple absolute, in any tract of land or real estate, lying and being in this State, not then being possessed of the legal estate or interest therein, at the time of the sale and conveyance, but after such sale and conveyance, the vendor shall become possessed of, and confirmed in the legal estate to the land or real estate, so sold and conveyed, it shall be taken and held to be in trust, and for the use of the grantee or vendee, *and the conveyance aforesaid, shall be held and taken, and shall be as valid as if the grantor or vendor had the legal estate or interest at the time of said sale or conveyance.*"

This statute applies to cases where the vendor is not, at the time of the conveyance, possessed of the legal estate or interest in the land conveyed, but afterwards becomes possessed of or confirmed in the legal estate. It is argued, however, that the act is limited to cases where the vendor has the equitable title, and does not read a case where the vendor has no title at all.

The language of the act requires no such limitation. A vendor has not the legal estate, either where he has an equitable title only, or where he has no title at all. There is nothing in the terms of the act which authorises a restriction of its provisions to only one of these conditions. Is there any thing in reason or justice, which requires such a limiation? I confess myself unable to perceive any. I think it was the intention of the legislature to give the legal title to such as had *acquired an equity* by the conveyance, and this did not depend upon the character of title, which the vendor had at the time of his deed, but upon *the character of the deed itself.* A deed may be upheld in equity, although the grantor had nothing at the time of its execution, if the consideration be sufficient and it is against good conscience in the vendor to permit it to be defeated. Thus the partition or settlement by heirs of a mere expectancy has been upheld in chancery. (1 Vercy 391) and where it has been accompanied with a warranty, it has been regarded as transferring the title

even at law. Jackson vs. Bradford 4 Wend. In Pennsylvania, where they have no courts of equity, and the action of ejectment is therefore, not confined to mere legal titles, a bargain and sale has been held to pass the after acquired titles, upon this very principle. Equity will enforce a covenant to convey, and *a fortiori* a conveyance. McWilliams vs. Nisby, 2 S. & R. 515. Our statute was intened to do what the courts in Pennsylvania have done in the absence of a chancery system.

It then depends upon the character of the deed, whether it is to be affected by our statute. It must be a conveyance, purporting to pass the *fee simple absolute.*

This language is not certainly used in a technical sense. The term fee simple is known at the common law as one which defines the quantity of estate. It is used in contradistinction from a fee tail, a life estate or a term of years. It is evidently, not employed in this sense in this provision of the act. It was surely not intended, that a quit claim deed, although the deed uses language to pass the fee, and not any smaller estate, would, therefore, pass a new title, not belonging to the grantor when he makes the deed. It was hardly intended to apply to a deed, conveying all right, title and interest of the grantor. Such a deed will, undoubtedly, pass the land itself, if the grantor has an estate therein, at the time of the conveyance, but it passes no estate which was not then possessed. Brown vs. Jackson, 9 Whea. 452. Nor would it be in accordance with the manifest intent of such conveyance, that after acquired titles should pass. So where a party had a vested interest, and also a contingent remainder in lands, and conveyed "all his right, title and interest," the deed was held only to convey his vested interest, although in this case the deed contained a general warranty. The warranty was held to be only co-extensive with the grant, and therefore, not estopping the grantor from claiming the contingent interest when it vested. Pell vs. Jackson 11 Wend. 110.

A deed purporting to convey a fee simple *absolute*, is not then, in my opinion, a deed which merely conveys something more than a fee tail, or life estate, or term of years. The statute intended something more than this. The term *absolute* gives a clue to the meaning of the whole phrase which I think is drawn from common usage, and not from the technical phraseology of law writers. Every man unlearned in the law understands what a deed conveying a fee simple absolute is. They understand it, as I humbly apprehend, to be a deed which purports or professes to convey an indefeasable title—not a quit claim deed, not a deed merely transfering the grantor's interest, be it more or less, but a deed con-

veying the land itself, and professing to convey it in such a manner that the grantee is not to be disturbed in his possession by any one.

It may be then, that our statute was intended to settle a question, which had been much discussed, and about which there was certainly great conflict of opinion ; whether a general warranty would operate to transfer a subsequently acquired legal title.    It, undoubtedly, settles this question in the affirmative, and I think it goes further.    It puts the whole question upon principles of sound sense and strict justice.    It does not limit its operation to deeds containing covenants of general warranty, but it extends to every deed, which purports to convey a fee simple *absolute*, whether it contains a general warranty or not.    It is easy to imagine numerous cases in which there are conveyances obviously intended, and purporting to convey absolute titles, but which omit any covenants of warranty.    It does not reach, and ought not to apply to a deed, where the grantor expressly guards against such inference, by inserting a special warranty against his own acts, and those claiming under him.

Chouteau's deed to Strother, purports to convey a tract of land, described as extending from Roy's line north to Labeaume's south line, and from the river to the common field lots west.    The exception of all this tract, is a subsequent part of the deed from its operation being repugnant to the main purpose of the deed, as we have before observed, is nugatory and void.    It is said that if a man grant his house, chambers, cellars and shops, excepting his shops, this is no good exception, for as the shops are expressly granted, the exception of them is repugnant to the grant.    "Or if the exception be of such a thing as the grantor cannot have nor doth belong to him by law; as if a lessee for years assign over all his term in the land, excepting the timber, trees, earth or clay, this exception is not good.    In this instance the exception is void for want of interest or ownership in the thing excepted."    Shepherds Touchstone, 7.    These principles, as we have already shown, apply to Chouteau's deed.    The deed would have been precisely the same in law if the exception had been omitted.    We treat it then as a deed for a specific tract of land to which Chouteau had no title.    Did it purport to convey a fee simple absolute ?    The deed contained this special covenant : "and the said Pierre Chouteau and Bridget his wife, do hereby, warrant the same free from the claim of themselves and all persons claiming under them, except those who may have deeds recorded in the clerk's office of St. Louis, according to the modifications of said claims, aforesaid described."    Treating the exception to the covenant as a mere nullity, it was then merely a covenant against the claims of the grantor,

and those claiming under him.  It was no warranty against existing incumbrances.  It was a mere quit claim deed.  It did not purport to convey a fee simple absolute.

The questions in relation to Mrs. A. P. Chouteau's interest, and the supposed estoppel in the deed from P. Chouteau to Bogy, do not seem to be material in the view we have taken of the case.

Mrs. Chouteau's interest was either a right of dower or a community interest under the marriage contract.  In either case it was not a legal estate upon which ejectment could be maintained.  The deed from P. Chouteau to A. P. Chouteau, was made after the introduction of the common law, and if Mrs. A. P. Chouteau, by virtue of her marriage contract, acquired a right to one half of the land so conveyed, it was only an equitable right.  Neither a private contract nor the Spanish law could control the law of conveyances.

If two persons should now agree that all the lands which the one or the other acquires, should belong to both in common, that agreement will not prevent the one, to whom a conveyance is made, from having the legal title.  The rights of the other under the contract, can only be enforced in equity.  The marriage contract between A. P. Chouteau and his wife would only give the wife an equitable title to one half the land conveyed to the husband, after the introduction of the common law.

Judgment reversed and cause remanded.

13    382
c172  ᵃ203.

# NOEL GREEN vs. THE STATE OF MISSOURI.