# WILLIAM F. LYTLE et al., Respondents, v. ED. JAMES et al., Appellants.

### Kansas City Court of Appeals, February 2, 1903.

1. **Mines and Mining: LICENSEE: TRESPASS: LEGAL RIGHT.** A mining licensee is without possessory right and can not maintain forcible entry and detainer or trespass, and, in short, is without any legal remedy whatever for injuries to the possession.

2. ——: ——: ——: **INJUNCTION.** Injunction will not lie as an original proposition to determine the title to land and the mines thereunder where the defendant holds under claim of right and color of title, but is allowed where the party is a mere trespasser.

3. ——: ——: ——: ——. A mining licensee has no ownership in the ore, but a right to acquire an interest therein; and an interference with such right by trespassers will be restrained by injunction.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*Redding & Owen* for appellants.

(1) An injunction will not lie as an original and independent proceeding to determine the title to land and mines located thereunder, where the same are held by the defendants, under claim of right and color of title. Smith v. Jameson, 91 Mo. 13. (2) The Center Creek Mining Company, under their rules and regulations, retain the possession of the lot sued for, and are entitled to all ores produced therefrom. The respondents were merely licensees having signed the rules and regulations of said company, and had no such posses-

sion as would entitle them to maintain this action. Rochester v. Mining Co., 86 Mo. App. 447; Lowe v. Smelting Co., 89 Mo. App. 680; Boone v. Stover, 66 Mo. 430; Foundry & Machine Co. v. Cole, 130 Mo. 1; McHose v. Ins. Co., 4 Mo. App. 521; Chynowith v. Mining Co., 74 Mo. 174; Nelson v. Nelson, 30 Mo. App. 184; Garver v. Gunther, 51 Mo. 545; Fisher v. During, 53 Mo. App. 553; Zinc Company v. Freeman, 75 Mo. App. 524; Grubb v. Bayard, 9 Morrison Mining Report 199; Iron Co. v. Iron Co., 9 Morrison Mining Report 226. (3) The respondents rented appellants' said lot twenty-four, and no definite time was fixed when the right of mining same should terminate; and the appellants having spent large sums of money and labor in developing said lot the respondents can not instantaneously and absolutely revoke the license, as reasonable notice must be given to terminate the right. Blanchard & Weeks on Mining, 483; Desloge v. Pearce, 38 Mo. 588.

*Thomas & Hackney* for respondents.

(1) Plaintiffs being the licensees of the Center Creek Mining Company, the legal title and possession of said lot were in the licensor, and, hence, plaintiffs could not maintain ejectment or forcible entry and detainer for the lot. Rochester v. Mining Co., 86 Mo. App. 447; Lowe v. Zinc Co., 89 Mo. App. 680. (2) Under their license plaintiffs had opened up a mine and had erected thereon a concentrating mill and were engaged in mining operations on the lot in question at the time of the cutting over by defendants. The plaintiff's interest in the lot was a very valuable one, while the act of defendants in cutting over and removing ores from the lot tended to absolutely destroy its value. The plaintiffs being unable to maintain an action at law to oust the trespassing defendants, a court of equity will protect the plaintiff's rights by preventing further en-

try and cutting and carrying away of ores by the trespasser; in fact, plaintiff's only remedy is in a court of equity. (3) Mines, quarries, etc., are protected by injunction upon the ground that injuries and depredations upon them are, or may cause, irreparable damages and also with the view to prevent multiplicity of actions for damages that might grow from the continuous violations of the rights of the owner. Iron Co. v. Reymert, 45 N. Y. 702; s. c., 7 Morrison Mining Rep. 528; Allison's Appeal, 77 Pa. St. 221; Barringer & Adams on Mines & Mining, 716-717.

BROADDUS, J.—This is a suit by plaintiffs to restrain the defendants from entering and mining on lot 24 of the Center Creek Mining Company's land in Jasper county. The plaintiffs, except McDonald and Moody, are licensees of the Center Creek Mining Company on this and other lots, and prior to this suit had erected a concentrating mill with appurtenances and had conducted mining operations on said lots. Previous to the suit, plaintiffs McDonald and Moody leased from the other plaintiffs, at a stipulated royalty, lot 24 and other lots and were conducting mining on the same when the injunction herein was granted.

In June, 1901, the defendants made a drift from their mine adjoining over onto lot 24 and were cutting and removing ores thereupon at the time of the granting of the injunction. The defense was that the defendants had leased said lot from plaintiffs McDonald and Moody prior to the injunction and that they were then operating on said lot under said lease. There was no writing evidencing such lease, and plaintiffs denied that any such lease had been made. This seemed to be about the only disputed fact in the case. The attempt was made to prove that plaintiffs McDonald and Moody had made a verbal lease to defendants, but as the court found for the plaintiffs it was equivalent to a finding that no such lease existed. We have examined the evidence and

are forced to the conclusion that the claim of the defendants in that respect was only a pretense, and that no such lease existed at or prior to the commencement of the suit.

The Center Creek Mining Company, under its rules and regulations, retained possession of the lot. The plaintiffs, except McDonald and Moody, who claim under their co-plaintiffs, registered under said rules and regulations as to the lot in controversy with other lots. The rules and regulations of said mining company are required under the mining law as provided by chapter 133, Revised Statutes 1899. Section 1 of the rules of said mining company provided: "Said company will keep at its office a register of all mining lots on said lands (its lands) and containing a copy of these rules and regulations, and no person will be permitted to prospect or mine on said lands until he shall, with the consent of the superintendent, select a mining lot or lots, and sign such register designating the same, thereby subscribing to the rules and regulations therein contained." Section 2 is as follows: "Work shall be commenced within five days after registering and shall thereafter be carried on continuously in good faith, and in good miner-like manner. Work shall not be suspended at any time except on written permission of the superintendent."

The court after having heard all the evidence made the temporary injunction perpetual. The defendants appealed.

It is contended that as the plaintiffs are merely licensees they can not maintain this action. In Rochester v. Gate City Mining Co., 86 Mo. App. 447, it was held: "A miner who enters a mining lot under mining rules is entitled to only a certain per cent of the mineral removed by him, is a mere licensee without possessory right, and his possession is not such possession as will sustain forcible entry and detainer." See also Lowe v. American Zinc Co., 89 Mo. App. 680. The plaintiffs

admit that such is the law, but insist that having no legal remedy they are entitled to resort to a court of equity to protect their rights. Section 3649, Revised Statutes 1899, provides .for the writ of injunction "Wherever in the opinion of the court an adequate remedy can not be afforded by an action for damages." In Arnold v. Burnett, decided at this term of the court, it was held that as the plaintiff had no interest in the ore upon the lot he could not maintain an action for trespass against one for digging and taking away ore from such lot; that the ore was a part of the realty before it was mined and belonged to the owner of the fee.

Under the rulings in the cases named the plaintiffs have no legal remedy whatever, much less an adequate one.

In Smith v. Jameson, 91 Mo. 13, it was held: "An injunction will not lie as an original and independent proposition, to determine the title to land and mines thereunder where the same are held by defendants under claim of right and color of title." But in Echelkamp v. Schrader, 45 Mo. 505, it was held: "While chancery will not use its extraordinary powers to restrain by injunction a trespasser merely because he is a trespasser, it will nevertheless interfere by injunction where the acts done or threatened are ruinous to the property trespassed upon, or of a character to permanently impair its just enjoyment in the future, as where the trespasser digs into and works a mine to the injury of the proprietor, or where timber is attempted to be cut down by a trespasser in collusion with the tenant of the land." And the court enforces its position by a quotation from Judge Story: "An injunction is now allowed in all cases of timber, coals or quarries when the party is a mere trespasser."

The plaintiffs' action is not predicated upon any ownership of the ore, but upon their right to acquire an interest therein as licensees.

The question presented for our consideration is, what rights, if any, did they have under the circumstances shown by the record of the case? It must be conceded that they were entitled, by virtue of registration under the mining laws of the State, to mine the ores in lot 24, and this was a contractual right which even the said mining company was bound to respect. By the rules and regulations of said mining company, the plaintiffs' right to mine said lot will not terminate until January 1, 1905, and is only subject to revocation for failure to comply with such rules and regulations. Notwithstanding plaintiffs had no interest in the ore until mined, and no interest in the realty itself, and no such legal possession as would support an action for trespass or forcible entry and unlawful detainer, yet they were in the actual possession of the lot, under contract, with the right to mine the ores. There is no distinction in law between the ownership of tangible property and a contractual property right. The plaintiffs' right to mine the ore on the lot in question was property just as much as the ore which belonged to the mining company. And we can readily conjecture that a miner under circumstances similar to this case, by reason of work done in the mine, the erection of buildings on the land, and cost of machinery, may acquire property and property rights in a mine of much greater value than the land itself. It would be useless to argue that, in such cases, the miner would not have the protection of the courts even as against the owner of the fee if he attempted to interfere with such property and property rights. In this case, the defendants were strangers who were found intermeddling with plaintiffs' right to mine the ores in question, and they ask the court for protection. Unless there is some way to prevent one miner from intruding upon another miner a state of anarchy would prevail in mining regions of the State, and confusion and violence would follow. But we are satisfied that there is a remedy for such a condition and that

the writ of injunction is that remedy and the only remedy. The question is too plain for argument or the citation of authorities.

The cause is affirmed. All concur.