## WILSON v. FISHER, Appellant.

### Division One, February 18, 1903.

1. **After-Acquired Interest in Land:** SHERIFF'S DEED. A sheriff's deed does not pass an after-acquired interest of the defendant in the execution. Only such interest in the property as such defendant had therein at the time of the sale passes by the sale and sheriff's deed.

2. ———: ———: TAX SUIT. If none of the defendants at the time a judgment was rendered had any title in the land, the purchaser at the execution sale and the grantee in his deed acquired none, even though one of the defendants had previously been made the grantee in a warranty deed from a grantor who had prior to the deed to her conveyed to another, and which other after the tax sale conveyed it back to her original grantor.

Appeal from Webster Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*L. O. Neider* and *Thos. H. Musick* for appellant.

Henry C. Page obtained nothing by his quitclaim deed from Emma S. Faull. Her interests in the premises have been conveyed to Naomi Wilson by the sheriff's deed for taxes in March, 1885. She had lost all power to convey by reason of the judgment and sale for taxes. Naomi Wilson acquired all the rights imparted in the general warranty deed from Henry C. Page to Emma S. Page, and if so, then by reason of the judgment, execution and sale for taxes in March, 1894, and the deed made, executed and delivered by the sheriff of Webster county, conveyed all the interest of both Emma S. Faull and Naomi Wilson to Annah Marvin, appellant's grantor. Alexander v. Schrieber and Huterhagen, 13 Mo. 371. The deed from Henry C. Page to Emma S. Page conveyed a fee simple absolute, that is,

an indefeasible estate in the premises which will fully appear from the recitals in the deed, which reads, ''and the said party of the first part and his heirs the said premises in the quiet and pleasurable possession of the party of the second part, her heirs and assigns, against the said party of the first part, and his heirs, and against all and every person or persons, whomsoever, claiming or to claim, the same, shall and will warrant and by these presents ever defend.'' This language is an assertion of present seizing in Henry C. Page and will estop him and those claiming under him from asserting a title which would involve a denial of seizing at the time of making the conveyance. Chauvin v. Wagoner, 26 Mo. 552; Stow v. Wyse, 18 Am. Dec. 99. Although the title paramount was in Charles E. Page from 1863 to the date of his quitclaim to Henry C., in December, 1893, yet when he did obtain the title from Charles E. Page, it inured by reason of the statute of uses and trusts to Emma S. Faull, formerly Emma S. Page, and her privies. R. S. 1899, sec. 4591; Bogy v. Shoab, 13 Mo. 365. From the evidence, as clearly shown by the record in this case, plaintiffs are estopped from claiming title to the premises, by reason of section 4591, Revised Statutes 1899, and the court erred in refusing appellant's declaration of law asked in the trial of the cause.

*A. H. Davis* and *M. Selph* for respondent.

(1) The plea that the inchoate right of title by inurement passed to defendant by two successive sales for delinquent taxes—the inurement still being inconsummate—is at most only an equitable defense, and hence is not available under a general denial. Kennedy v. Daniels, 20 Mo. 104; Carman v. Johnson, 20 Mo. 108; White v. Davis, 50 Mo. 333; Ellis v. Railroad, 51 Mo. 200; Russell v. Whitely, 59 Mo. 196. There could be no doubt that the defense set up would be regarded as one in equity except for the provisions of section 4591, Revised Statutes 1899. This only applies

to the grantee of one who conveyed before acquiring title, and not to the assignee of such grantee. In this case the defense can not stand unless the statute will pass the legal title to the assignee of the assignee of the grantee in such cases, even where, as in this case, both assignments are under execution sales and made before the inurement has been consummated by the grantor acquiring title. If these execution sales passed anything it was nothing more than an equity, and was not sufficient to constitute a legal defense. In White v. Davis, supra, it is held that purchaser at execution sale takes only the interest then held by execution debtor, and it can not be effected—either enlarged or cut down—by what may occur in the future. (2) Neither Emma S. Faull nor Naomi Wilson or her "unknown heirs" ever had such interest in the land as was subject to sale under execution. Waller v. Mardus, 29 Mo. 25; McIlvane v. Smith, 42 Mo. 45; White v. Davis, 50 Mo. 333; Morgan v. Bouse, 53 Mo. 219; Davis v. Greene, 102 Mo. 170; Block v. Morrison, 112 Mo. 343; Perkins v. Meighan, 147 Mo. 647; Young v. Thresher, 61 Mo. App. 413; R. S. 1899, sec. 3171. (3) The inchoate right of Emma S. Faull to a title by inurement was not such an interest in the land as was the subject of assessment and taxation, and could not be sold or forfeited for non-payment of taxes by her. Blevins v. Smith, 104 Mo. 583; Hilton v. Smith, 134 Mo. 499; Howell v. Jump, 140 Mo. 441. (4) The recorded deed from Henry C. Page to Emma S. Page was not constructive notice to Thompson, who was the purchaser in good faith for a valuable consideration and without notice of a prior deed by his grantor. Dodd v. Williams, 3 Mo. App. 278; Crockett v. Maguire, 10 Mo. 34; Ford v. U. C. Society, 120 Mo. 498.

MARSHALL, J.—This is an action in ejectment for the north half of the southeast quarter of section 21, township 28, range 16 west, in Webster county. The petition is in the usual form, and the answer is a general denial.

It is claimed that Henry C. Page is the common source of title. On January 16, 1863, Henry C. Page conveyed the land to Charles E. Page, by a general warranty deed, which was properly recorded on August 18, 1865. There is no evidence in this record that Charles E. Page ever was in possession of the land at any time. In 1869 Henry C. Page conveyed the land by warranty deed to Emma S. Page. The plaintiff claims title in the following way: On September 13, 1893, Emma S. Faull (nee Page) quitclaimed the land to Henry C. Page; on December 23, 1893, Charles E. Page conveyed the land by a quitclaim deed to his grantor, Henry C. Page; thus Henry reacquired all the interest and title he had conveyed to Charles and Emma, and on January 2, 1894, Henry C. Page quitclaimed the land to W. S. Thompson; on March 30, 1894, W. S. Thompson conveyed the land by a general warranty deed to I. S. Wilson, who is the husband of the plaintiff. Just here appears a very unaccountable incident or link in the chain of circumstances. Notwithstanding Charles E. Page reconveyed the land to Henry C. Page, on December 23, 1893, Charles E. Page began an action in ejectment for the land against one Jonathan Sherrills, who was in possession of the land, returnable to the March term, 1894. I. S. Wilson (who had purchased from W. S. Thompson as aforesaid, and who in turn had purchased from Henry C. Page, who had reacquired the title from Charles E. Page) voluntarily appeared and was made a party defendant, and defended the suit, with the result that a judgment was entered in his favor, but the costs were, for some unexplained and inconceivable reason, adjudged against him. He did not pay the whole of the costs, and so an execution was issued against said I. S. Wilson, and levied on the land, and it was sold by the sheriff, on September 16, 1895, to satisfy said execution for costs, and W. T. Brewer became the purchaser. Brewer quitclaimed the land to Thomas W. Hunt on November 28, 1898, and Hunt quitclaimed the land to Eliza Wilson (the plaintiff herein and the wife of I. S. Wilson) on

the same day. The judgment against Wilson for the costs in the ejectment case brought by Charles E. Page was entered on March 30, 1894. Thereafter on September 17, 1894, Wilson quitclaimed the land to W. E. Beason, and on the same day Beason quitclaimed the land to Eliza Hunt, who is now Eliza Wilson, the second wife of I. S. Wilson.

On the other hand, the defendant claims title in this way: After Henry C. Page had conveyed the land in 1863 to Charles E. Page, he (Henry) on September 29, 1869, conveyed it by warranty deed to Emma S. Page. She afterwards married J. P. Faull. The taxes on the land became delinquent for the years 1874, 1879, 1880 and 1881, and the collector brought suit to recover the same, and made Emma S. Faull and J. P. Faull, her husband, the parties defendant. A judgment was rendered on September 24, 1881, and on March 18, 1885, the land was sold under said judgment, and Naomi Wilson, the first wife of I. S. Wilson, became the purchaser. She appears to have entered into possession through her tenants, one of whom was Jonathan Sherrills, the original defendant in the ejectment suit brought in 1894 by Charles E. Page against Jonathan Sherrills.

The taxes for 1887, 1888 and 1889, became delinquent and the collector brought suit for them, making Emma S. Faull, late Emma S. Page, and J. P. Faull her husband, and I. S. Wilson, and the unknown heirs of Naomi Wilson, parties defendant. It will be noted that Naomi Wilson was the first wife of I. S. Wilson, and had purchased the land at the first tax sale in 1885, and held the possession through her tenant, Sherrills, afterwards, and she, it seems, had died about the year 1888. Judgment was entered in this second tax suit, and the land was sold on March 19, 1894, to Annah A. Marvin. On February 11, 1898, Andrew J. Marvin contracted with the defendant, William Fisher, to sell him the land for one hundred and fifty dollars, twenty-five dollars to be paid on October 1, 1898, and the balance in annual installments of twelve dollars and

fifty cents, the deed to be made when the purchase price was fully paid. The contract, in its body, recites that it is between Andrew J. Marvin, party of the first part, and Will Fisher party of the second part, and it is signed "Will Fisher (Seal), Annah A. Marvin, (Seal), A. J. Marvin (Seal), agent for Annah A. Marvin."

A. J. Marvin testified that he bought the land from I. S. Wilson giving him therefor a half interest in his institute for the cure of inebriates, at Springfield, and that Wilson said that to clear up the title he would have the land sold for taxes and thereby cut out the heirs of his first wife, and that this was done, and that Wilson bought the land in at the tax sale and had the deed made to his (Marvin's) second wife. Wilson denies all of this but admits that he acted as agent for Mrs. Marvin in buying the land at the tax sale.

This is the defendant's chain of title. The court found for the plaintiff, and the defendant appealed.

## I.

The defendant contends that although Henry C. Page conveyed the land to Charles E. Page in July, 1863, and did not convey to Emma S. Page, through whom the defendant claims title, until 1869, nevertheless that when Charles E. Page reconveyed the land to Henry C. Page in 1893, the title immediately inured to the benefit of Emma S. Page and those who claim under her, and that the conveyances by Henry C. Page after he so reacquired title in 1893, under which the plaintiff claims title, were ineffective as against the defendant's title (or that of Annah A. Marvin, if the contract aforesaid be not adequate to vest a right in the defendant).

This is the single question in this case. It is conceded that Henry C. Page had no title to the land when he executed the warranty deed to Emma S. Page in 1869. The legal title was then firmly and absolutely vested in Charles E. Page by virtue of the warranty

deed from Henry C. Page, made in 1863. Emma S. Page acquired, therefore, nothing at that time by that deed. Neither has Emma S. Page ever attempted to convey any title or right that she had to any one whomsoever except to reconvey it in 1893 to Henry C. Page; her grantor. The title that the defendant sets up was acquired through two sales of the land under two judgments for taxes. The question, therefore, is, whether the reconveyance by Charles E. Page to Henry C. Page in 1893 inured to the benefit of the defendants.

The plaintiff contends, first, that under our statute an after-acquired estate inures only to the benefit of the grantee in a prior deed that purported to convey an indefeasible estate in fee simple, and, second, that the tax sale conveyed no title, because neither Emma S. Faull (Page), nor Naomi Wilson had any title at the time the judgments for taxes were rendered, and therefore only an inchoate right of title passed by the tax sales, which could be enforced only in equity, and is not available as a defense under a general denial in ejectment.

The statute relied on is as follows: "Where a grantor, by the terms of his deed, undertakes to convey to the grantee an indefeasible estate in fee simple absolute, and shall not, at the time of such conveyance, have the legal title to the estate sought to be conveyed, but shall afterwards acquire it, the legal estate subsequently acquired by him shall immediately pass to the grantee; and such conveyance shall be as effective as though such legal estate had been in the grantor at the time of the conveyance." [R. S. 1899, sec. 4591.]

In 1825 the first statute bearing upon this subject was enacted in this State. The language of that statute was different from that employed in the present statute. Then the language as to the character of the conveyance was, "an estate in fee simple absolute." Now it is "an indefeasible estate in fee simple absolute." The Statute of 1825 was construed by this court in Bogy v. Shoab, 13 Mo. 365, and it was held that it meant an indefeasible estate in fee simple absolute, and that it

was not intended by the statute that after-acquired titles should inure to the benefit of any one who held by virtue of a quitclaim deed, or of any deed that conveyed less than an indefeasible estate in fee simple absolute.

Some doubt was expressed in Valle v. Clemens, 18 Mo. l. c. 490, as to the correctness of the rule laid down in Bogy v. Shoab, supra, but it was also held in that case that the statute did not apply to a title acquired by a quitclaim deed. It will be noted, however, that the statute as it now is, applies, by its express terms, only to such estates as the Statute of 1825 was interpreted in Bogy v. Shoab, supra, to apply to, the change in the statute having been doubtless made to set at rest any question as to the intention of the lawmakers.

In Bogy v. Shoab, supra, l. c. 378, it was said: "The new title is supposed to inure by way of estoppel, to the use of the grantee and his assigns."

In Rector v. Waugh, 17 Mo. 13, it was held that if one tenant in common conveys to his cotenant by a warranty deed, and the deed does not contain words of perpetuity, the warranty becomes extinct by the death of the grantee, and any after-acquired title by the grantor does not, by virtue of such a deed, inure to the heirs of the grantee.

In White v. Davis, 50 Mo. l. c. 334, it was said: "Whatever title Maynard had at the time of the execution sale vested in the plaintiff by the sheriff's deed; whether he had any equitable interest, or whether such equity was vested in Maynard's wife, it is unnecessary now to inquire. It is sufficient to say that at the time of the execution sale Maynard did not have the legal title to any part of this land. A sheriff's deed operates only on the existing title, and does not pass a subsequently acquired title. When a grantor undertakes to convey to the grantee an indefeasible estate in fee simple absolute, and has not at the time the legal title to the estate sought to be conveyed, but after-

wards acquires it, the legal estate so acquired immediately passes to the grantee. [See Wagner's Stat., 135, sec. 3.] A sheriff can convey only such interest as the defendant has at the time of the sale, and he has no power to undertake to convey a fee simple absolute when the defendant in the execution has no such estate vested in him."

In Butcher v. Rogers, 60 Mo. 138, the deed contained the words "grants, bargains and sells, all the right, title and interest that Parsley and wife have in the premises in dispute," and contained this additional recital: "their title being a sheriff's deed, said land being sold as the property of John Butcher, to satisfy an execution in favor of Austin Shine." This court, speaking through SHERWOOD, J., said: "This deed was in effect a mere quitclaim deed and inoperative to pass an after-acquired title. [Gibson v. Chouteau's Heirs, 39 Mo. 536, and cas. cit.; Bogy v. Shoab, 13 Mo. 365.] As this was the case, the title acquired by Parsley, defendant's grantor, at the March term, 1865, as shown by both the record and statement of counsel, could, by no possibility, inure to the benefit of defendant, and he therefore showed by the evidence which he adduced at the trial no defense whatever to plaintiff's action."

In Brawford v. Wolfe, 103 Mo. 391, the owner of the land died leaving no descendants. His widow remarried and joined her second husband in a deed purporting to convey the land with covenants of warranty, after which she elected, under the statute, to take one-half of the land in lieu of dower. It was held that the title acquired by election did not inure to the benefit of her grantees, nor did her election operate by relation to give effect to her deed. MACFARLANE, J., speaking for the court said: "If the title acquired by the widow, through her election, inured to the benefit of, or vested in, the grantees in her deed of conveyance, in which she was joined with her husband, it was either by virtue of the equitable principles of estoppel, or by

the operation of the statute.   [Sec. 3940, R. S. 1879.]
The statute is but a recognition of the common-law
doctrine of estoppel, and both may be considered to-
gether.

"The doctrine of inurement, whether under the
statute or at common law, is raised upon the covenants
of title contained in the deed, under which it operates.
So it is held that the doctrine does not apply at common
law to a deed of quitclaim or release merely.   [White
v. Patten, 24 Pick. 324; Jackson v. Bradford, 4 Wend.
622; Dart v. Dart, 7 Conn. 256; Chew v. Barnet, 11
Serg. & Rawle 389.]   To the same effect have been
the rulings of this court in respect to its operation
under the statute.   The statute does not intend 'that
a quitclaim deed, although it uses language to pass the
fee and not any smaller estate, would, therefore, pass
a new title not belonging to the grantor, when he makes
the deed.   It was hardly intended to apply to a deed
conveying all right, title and interest of the grantor.'
Such a deed is not supposed to be within the contem-
plation of the section, because it does not purport to
convey an  estate in fee simple absolute.   [Bogy v.
Shoab, 13 Mo. 378; Valle v. Clemens, 18 Mo. 486;
Rector v. Waugh, 17 Mo. 22; Gibson v. Chouteau's
Heirs, 39 Mo. 566; Butcher v. Rogers, 60 Mo. 139;
Kimmel v. Benna, 70 Mo. 52.]

"Under the statute, the wife is not bound upon
her covenants contained in the deed, except so far as
may be necessary effectually to convey from her and
her heirs all her right, title and interest in the land
at the time the deed was made.   By the terms of the
statute, her deed is, in its effect, whatever its form,
simply a quitclaim of all her existing right, title and
interest.   Such being the effect of the deed, the rulings
of the court in regard to inurement, under quitclaim
deeds, would apply to her deed, regardless of its form
or covenants.   And such I understand to be the rul-
ings of this court. [Barker v. Circle, 60 Mo. 529;
Reese v. Smith, 12 Mo. 348; Bank v. Robidoux, 57 Mo.
446.]

"But Mrs. Russell would be bound, under her covenants, to the extent of conveying all the title she had when she made the deed. This leads to the inquiry as to what title or interest she had in the land, upon the death of her husband. The widow, at common law and under our statute, has dower in the lands of which her husband dies seized. The law invests her with this right without election or other act on her part, and this is all the law does invest her with, unless she, herself, does some act required by law. Upon the death of the husband the title of the land, under the laws of descent in this State, passed to and vested in his next of kin, subject to the widow's right of dower. If the title vested in the heir, it did not vest in the widow. At the time the conveyance was made the title was in the heir, one-half thereof subject to be divested, and vested in the widow, upon making and filing her election in the manner and within the time pointed out and prescribed by law. When her election is properly made, she loses her dower right altogether, and becomes seized in lieu thereof of an estate in the land. Previous to her election she had no estate, but merely a right in action—a right to have her dower assigned and set off to her out of the land.

"The right to elect was a mere personal right, which she could exercise or not, at her pleasure, and, by the exercise of which, she was enabled to acquire an interest in the land. This right was not in itself an interest, and upon filing her election she became invested with a new and independent estate, as much so as if it had been acquired by deed from the heir. 'It is obvious that when a right grows out of an election, it can not arise or come into existence until an election is actually made.' [Welch v Anderson, 28 Mo. 298.] 'The doctrine is, that when an election creates the interest, nothing will pass until an election is made; and, if no election can be made, no interest will arise.' [Hamilton v. O'Neil, 9 Mo. 18, citing United States v. Grundy, 3 Cranch 337. See, also, Matney v. Graham, 50 Mo. 562.]

"The interest, then, acquired by Mrs. Russell, through means of her election, did not, either by virtue of the statute or the common-law principles of estoppel, inure to the benefit of her grantees, and plaintiff had no such title as would authorize a recovery in this suit, unless such title was acquired by reason of the operation of other legal principles.

"It does not seem that counsel for plaintiff insists, with much confidence, on an acquisition of title from the election by the widow, on the ground of inurement, either at common-law or under the statute; but does, with much ingenuity of argument and earnestness, insist that, when the election was made, it took effect by relation, as of the date of the execution of the deed. We do not think the contention can be sustained on any well-recognized principles of law.

" 'By the doctrine of relation is meant that principle by which an act done at one time is considered, by fiction of law, to have been done at some antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as a conveyance or deed. The last proceeding, which consummates the conveyance, is held, for certain purposes, to take effect by relation, as of the day when the first proceeding was had. . . . The doctrine of relation is a fiction of law, adopted by the courts solely for the purpose of justice, and is only applied for the security and protection of the persons who stand in some privity with the party that initiated proceedings for the land and acquired the equitable claim or right to the title.' [Gibson v. Chouteau, 13 Wall. 100; Heath v. Ross, 12 Johns. 140; Powers v. Hurmert, 51 Mo. 136; Slagel v. Murdock, 65 Mo. 525.]

"It will be seen that the doctrine only applies when there are two or more concurrent acts required to make a conveyance or perfect a right. The first act in the series is preferred, and the last, which perfects the conveyance or right, is, by fiction of law, taken as of the date of the first, and thus injustice is prevented by cutting off wrongful intervening claims of parties and

privies, and others having notice. Each successive act or proceeding must have reference to the other, and reference to the common conclusion or result. The validity or sufficiency of the right or title is not created or acquired by the doctrine, but the acquired rights are merely protected thereby.''

The most exhaustive review of the law upon this subject in this State, is that made by GANTT, J., in the case of Ford v. Unity Church Society, 120 Mo. 498. There a widow, to whom land had been devised for life, remainder to her children, made a voluntary deed to her daughter purporting to convey a fee simple ''in the one divided fourth'' of the land. Two years later she acquired the fourth interest of her son, and conveyed it to the son's wife. The question was whether this after-acquired fourth interest inured to the benefit of the daughter or passed to the son's wife. After citing the statute and reviewing the cases in this State from Bogy v. Shoab, 13 Mo. 365, to Brawford v. Wolfe, 103 Mo. 391 (except White v. Davis, 50 Mo. 333, which seems to have been overlooked in subsequent cases), and after an exhaustive review of the common-law rule, it was said: ''Our conclusion is, that a recorded deed by one who has no title, but who afterwards acquires the title by recorded deed, is not constructive notice to a subsequent purchaser in good faith from the common grantor. We think, when he searches till he finds the deed by which his grantor acquires the title, he is not bound to look for deeds made prior to that time. Such deeds are not 'in the line of title,' as that term is used by conveyancers and searchers.'' And accordingly the after-acquired title was held not to inure to the benefit of the daughter.

It thus appears that whatever may be the true meaning of the statute as to after-acquired property, as applied to grantees and those claiming under them by virtue of a conveyance from the owner himself, the rule is settled that a sheriff's deed will not pass an after-acquired interest of the defendant in the execution, for the obvious reason that only property can be sold

under execution, and therefore only such interest in the property as the defendant in the execution had at the time of the sale, passes by the sale.

The first judgment for taxes was rendered in 1884, and the second in September, 1893. At neither time did any of the defendants in the tax suit have any title to the land. The judgment could only affect the rights of the persons who were parties to the suit. No title or inchoate right or otherwise, therefore, passed by virtue of those tax judgments, and the sales thereunder. Hence, neither Naomi Wilson, nor Annah A. Marvin, nor the defendant, ever acquired any right or title to the land. The defendant, therefore, is not entitled to a judgment on the strength of his own title.

But it does not follow that the plaintiff is entitled to recover. She must recover upon the strength of her own title, not on the weakness of her adversary's.

The plaintiff claims by mesne conveyances from Henry C. Page after he reacquired the title from Charles S. Page on December 23, 1893, and from Emma S. Faull in September, 1893.

It will be remembered that Henry C. Page conveyed by warranty deed to Charles E. Page in 1863, and afterwards by warranty deed to Emma S. Page in 1869. Both of those deeds conveyed an indefeasible estate in fee simple absolute. Afterwards in September, 1893, Emma reconveyed to Henry, and in December Charles reconveyed to Henry. In this way Henry became again seized and possessed of an indefeasible estate in fee simple absolute. His title passed by mesne conveyance to the plaintiff. She therefore is entitled to recover on the strength of her own title. The judgment of the circuit court was in her favor, and it is therefore affirmed. All concur.