WILLIAM N. BARRON, Respondent, v. H. D. WILLIAMS COOPERAGE COMPANY and GEORGE KINNARD, Appellants.

Springfield Court of Appeals, December 12, 1914.

1. **INJUNCTIONS: Cutting Timber: Review of Evidence.** Suit to enjoin defendants from cutting certain timber on land in question. Evidence reviewed.

185MoApp40

2. **JUDGMENTS: Reversal: Effect on Non-resident Defendants, Who Did Not Appear.** In a suit to quiet title, a reversal of judgment for plaintiff at the instance of certain defendants who appeared, was had. This did not leave the judgment binding on other defendants who were non-residents and who were brought in by publication but who did not appear.

3. **APPEARANCE: Non-resident Defendant: Publication: Entries of Clerk: Insufficient to Constitute Appearance.** Suit to quiet title in which certain defendants were non-resident. The clerk's entry concerning a motion for a new trial made by an attorney for some of the defendants, set out that the motion was filed for those defendants and for "other defendants." Such entry did not enter the appearance of the non-resident defendants, brought in by publication, where every other record shows that the non-resident defendants were absent.

4. **WARRANTY DEED: Defective Title: Good Title Subsequently Acquired: Inures to Grantee.** If a general warranty deed conveying a fee simple title is made by a grantor when in fact he has no title or has a defective title, a good title subsequently acquired will inure to the benefit of the grantee.

5. **TITLE: Acquired Subsequent to Consent Decree: In Whom Vested.** In a suit involving title to certain timber lands, a consent decree was entered in which it was expressly stated that the title to the lands was not warranted. Subsequently grantor acquired a superior title. Such title did not inure to the benefit of the grantee.

6. **INJUNCTION: When it Will Lie: Remedy at Law.** Injunction is a remedy afforded to one whose property, real or personal, is threatened with irreparable injury and to prevent the doing of any legal wrong when in the opinion of the court an adequate remedy cannot be afforded by an action for damages. (Sec. 2534, R. S. 1909. )

7. **INJUNCTIONS: Cutting Timbers: Attacking Title of Plaintiff: Fraud.** Suit to enjoin the cutting of timber on certain land. It is not permissible for defendant to show that plaintiff was at the time he acquired title to the timber the agent of a corporation and that he acquired his title by a fraud upon his principal.

8. **———: ———: When Law Remedy Inadequate.** Injunction *held* to be a proper remedy to prevent the cutting of timber, under a claim of right, where the evidence showed that the timber was of very slow growth and that great expense would be incurred in watching the timber and keeping an account of such as defendant saw fit to cut.

9. **APPEAL AND ERROR:** Evidence: Harmless Admission and Exclusion. In an equity case the admission or exclusion of evidence is rarely reversible error.

10. **APPELLATE PRACTICE:** Evidence: Opinion Evidence: When Not Prejudicial Error. Where a witness in an injunction suit testified that a certain person was dead and left two brothers and a sister, none of whom left surviving children, although the further statement as to who were sole heirs of such person was opinion evidence, the error in admitting same was not prejudicial under the circumstances.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

AFFIRMED.

*Douglas W. Robert* and *Whaley & Ing* for appellants.

(1). The decree in the case of Heike v. Williams Cooperage Co. confirmed the rights of Williams Co. to the 18-inch white oak trees on the land and the Great Western Land Co. and plaintiff· herein are bound thereby (as the successors in title as well as the agents and servants of the Brooklyn Cooperage Co., are bound thereby. 2 High on Injunct., sec. 1440a; In re Coggshall, 100 Mo. App. 585. (2) The plaintiff has· an adequate remedy at law, hence the bill should have been dismissed. 1 High Injunct., secs. 673, 728; Powell v. Canaday, 95 Mo. App. 713; Crenshaw v. Cook, 65 Mo. App. 264; 2 Beach Inj., sec. 1125. (3) The plaintiff's title to the trees being in dispute, no injunction should have been granted. Smith v. Jameson, 91 Mo. 13; Powell v. Canaday, 95 Mo. App. 713; 2 Beach Injunct., secs. 998, 1125, 1139; 1 High Injunct., secs. 674, 676, 698. (4) The filing of the motions for a new trial and in arrest of judgment by all the defendants in the case of Oxley Stave Co. v. Butler County was a waiver of any defect·in service or summons. Clark v. Brotherhood, 99 Mo. App. 687; Rector

v. Circuit Court, 1 Mo. 607; Schell v. Leland, 45 Mo. 293; Lorithan v. Caldwell, 52 Mo. 121. (5) As the judgment in the case of Oxley Stave Co. v. Butler County was only appealed from by three of the defendants, it became final as to all others. Bank v. Umrath, 55 Mo. App. 49; Holborn v. Norton, 60 Mo. App. 102; Christopher v. Kelly, 91 Mo. App. 100; Wollman v. Loewen, 108 Mo. App. 590; Potter v. Whitten, 161 Mo. App. 127; St. Louis v. Lanigan, 97 Mo. 180; Holt County v. Cannon, 114 Mo. 514; Burke v. Kansas City, 118 Mo. 323. (6) It was error to permit witness to testify "who were the sole heirs of William S. Dewey." This was a legal conclusion. Sparr v. Wellman, 11 Mo. 230; Wetherell v. Patterson, 31 Mo. 458; Kendall Shoe Co. v. Bain, 46 Mo. App. 581; Nuestead v. Mortgage Co., 49 Mo. App. 200; McCormack v. Herboth, 115 Mo. App. 202; Van Winkle v. Crowell, 146 U. S. 42; Kirkpatrick v. Clark, 132 Ill. 342, 24 N. E. 71; Montgomery v. Martin, 104 Mich. 390, 62 N. W. 578; Shifflet v. Morelle, 68 Tex. 382, 4 S. W. 843; Watrous v. Morrison, 33 Fla. 261, 14 So. 805; Brandon v. Distil. Co., 52 So. (Ala.) 640; Arnold v. Johnson, 128 S. W. (Tex.) 1186; Plaster Board Co. v. Bldg. Co., 121 N. Y. S. 238.

*Arthur T. Brewster* and *E. R. Lentz* for respondent.

(1) The decree in the case of the F. G. Oxley Stave Company v. Butler County did not have effect to destroy or in any manner affect the title of I. W. G. Weirman, or of James J. Johnson, under whom plaintiff claims in this case, because I. W. G. Weirman was not made a party to that suit and consequently whatever decree was rendered does not affect his interest; and, because the service was attempted to be had upon James J. Johnson by publication. The order of publication introduced in evidence is fatally

defective, and there is no evidence in this record that the order of publication was ever published as required by law. F. G. Oxley Stave Co. et al. v. Butler County et al., 121 Mo. 642. (2) In the Oxley Stave Co. case the defendant, Butler county, was served with process, filed answer, participated in the trial and prosecuted an appeal to the Supreme Court. The decree of the circuit court was reversed as to the defendant, Butler county. When the decree was reversed as to Butler county, it necessarily operated as a reversal as to all of the defendants whose title is shown to have been founded upon conveyances from Butler county, and who made default therein. Wollmar v. Loevin, 108 Mo. App. 590; Bank v. Umrath, 55 Mo. App. 43. (3) A deed without covenants of warranty does not estop the grantors from setting up an after acquired title against his grantees. Gibson v. Chouteau, 39 Mo. 566; Wilson v. Fisher, 172 Mo. 21-3; Cadiz v. Major, 33 Calif. 288; Benneson v. Aiken, 102 Ill. 96; Thorpe v. Haines, 107 Ind. 234; Jackson v. Peike, 4 Wend. 300; Jourdian v. Fox, 90 Wis. 99. (4) Plaintiff has no adequate remedy at law and is therefore entitled to injunction relief. Turner v. Stewart, 98 Mo. 580; Sills v. Goodyear, 80 Mo. App. 132; Hobart, etc. Co. v. Stone, 135 Mo. App. 556-7; McPike v. West, 71 Mo. 199; Saving Bank v. Kercheval, 65 Mo. 682; Damschroder v. Thias, 51 Mo. 100; Eckelcamp v. Schrader, 45 Mo. 505; Hayden v. Tucker, 37 Mo. 215. (5) The proof to support any charge of fraud must be clear and convincing and such as to overcome the legal presumption of innocence and beget in the mind a belief in the truth of the charge of unfair dealing. Dodson v. Norman et al., 169 S. W. 527.

FARRINGTON, J.—This is an appeal by the defendants from a decree rendered on May 2, 1914, in the circuit court of Butler county whereby defendants

were perpetually enjoined from cutting certain white oak timber on lands located in said county. As to defendant H. D. Williams the bill was dismissed.

It is necessary to give a brief history of the relationship of the parties and their relations with reference to the land on which the timber in dispute grows in order that appellants' theory as to the errors assigned may be made plain.

The plaintiff is a resident of Butler county, and is the general agent, manager, and attorney of the Brooklyn Cooperage Company and of the Great Western Land Company, two corporations. From the record it appears that he had a free hand in managing their properties in Missouri. The defendant cooperage company (appellant) is a corporation engaged in the manufacture of products made from white oak timber. George W. Kinnard was an agent in the employ of the H. D. Williams Cooperage Company, and H. D. Williams was an owner of considerable stock and an officer in said company.

Some years prior to the institution of this suit, there was a controversy between the Brooklyn Cooperage Company and Charles R. Heike and Arthur Donner over the right of the H. D. Williams Cooperage Company and H. D. Williams to cut the white oak timber on the land owned by the Brooklyn Cooperage Company and Heike and Donner. The Brooklyn Cooperage Company and Heike and Donner instituted a suit in the United States District Court for the eastern district of Missouri seeking to enjoin H. D. Williams and the H. D. Williams Cooperage Company from cutting the white oak timber on the land involved in the case now before us as well as that on other lands. An answer was filed by the defendants in that suit setting up certain claims and rights to the timber. While that suit was pending, a compromise was reached betwen the parties and a consent decree was entered by the court giving the defendants

therein the right to cut all the white oak timber (on the land involved in the case before us) having a stump diameter of eighteen inches and above for a period of time ending April 13, 1915. This consent decree was entered in accordance with a certain contract of settlement between the parties referred to in the evidence as exhibits A and B, the same being set up in an answer of the Great Western Land Company and the Brooklyn Cooperage Company to a complaint seeking an injunction filed in the United States District Court for the eastern district of Missouri by the H. D. Williams Cooperage Company. After that decree was entered, the Brooklyn Cooperage Company and Heike and Donner conveyed all the interest they had in the lands to the Great Western Land Company. As stated, Barron was the agent, officer and attorney of the Brooklyn Cooperage Company and of the Great Western Land Company and was thoroughly conversant and familiar with all the dealings between the parties, and had been the attorney of said companies in their pleadings leading up to the decree, and knew of the agreed settlement, the contract, and the decree entered carrying out such compromise.

After that settlement was made and such consent decree entered, a suit was brought against the Great Western Land Company, the successor to the title of the Brooklyn Cooperage Company, and the H. D. Williams Cooperage Company and H. D. Williams by Margaret A. Weirman and Laura Weirman Burnes, and another suit was brought by Mary J. Harston against the Great Western Land Company. The plaintiffs in those two suits set up a claim to the title to the land alleged to be paramount to that of the defendants therein. Those suits were dismissed by the plaintiff therein and they executed deeds conveying their interests in the land to the plaintiff in our case, William N. Barron. It is shown that for

the Weirman interest plaintiff (Barron) paid $3100, and for the Harston interest, $2500, and this money was paid out of the funds of the two corporations (the Brooklyn Cooperage Company and the Great Western Land Company) by Barron, their managing agent. He then deeded the land to the two corporations just mentioned, conveying all the title he had acquired excepting and reserving all the white oak timber on said land. One corporation paid $2700 for the land, the other, $2200, and Barron personally paid $400 and $300 respectively for the timber rights which he reserved to himself.

The plaintiff, now claiming title through the deeds conveying the land subsequent to the consent decree entered in the United States District Court, made after a compromise agreement between the parties, seeks in this action to restrain the defendants herein from interfering with the timber notwithstanding any rights they acquired under the consent decree of the United States District Court.

The defendants claim, first, that the title acquired by Barron from the Weirmans and Mary J. Harston was not paramount to the title owned by the Brooklyn Cooperage Company and the Great Western Land Company and Heike and Donner, and, for that reason, that he has no right to interfere with them in exercising their rights acquired under the consent decree. Second, that Barron's title, if any, was acquired by him as agent, attorney or trustee for the Great Western Land Company and the Brooklyn Cooperage Company, and that said corporations owned whatever he bought, and that they cannot, nor can he, being their agent and attorney, interfere with the defendants by reason of such consent decree even if they did acquire a paramount title to the title they claimed to own when the consent decree was entered. Third, that, as Barron claimed in the bill in this case, the white oak timber was the chief value of the land,

and it appearing that the entire purchase price of $5600 of which he and his corporations paid $4900 and he personally only $700, and that he reserved the timber rights which he says is the chief value of the land, he is guilty of defrauding his own companies and therefore does not come into equity with clean hands. Fourth, that the owner of only the timber growing on land with the title of the land in some one else cannot maintain a bill to enjoin trespass or threatened trespass against one cutting or about to cut the timber. Fifth, that the court erred in the admission of certain testimony.

Whether plaintiff has title to the timber is of course a vital question in determining whether he can maintain this action. It will only be necessary to discuss the alleged flaw in his title. Without going into detail it can be generally stated as follows: Plaintiff has a title running through conveyances from the United States down to a deed made to *I. W. G.* Weirman in 1870 and from the Weirman heirs to the plaintiff, and from the United States down to one Johnson in 1885, and from his grantees, through Mary J. Harston, to the plaintiff. In 1890 a suit was brought by the F. G. Oxley Stave Company and others against Butler county and a large number of other defendants for the purpose of setting aside and canceling many deeds to lands comprising a large tract in said county, including the land on which the timber grows with which we are concerned in this appeal. Among some one hundred defendants in that case was *J. W. G.* Weirman and also the grantor in the deed to Mary J. Harston. It is uncontroverted that the order of publication was void as it described no lands. That action was brought against one hundred or more defendants who were claiming some interest in the land. The petition therein also set out by name some fifty or seventy-five persons who it alleged to be non-residents of Missouri, among which number is found

the names of the grantors of the Weirman and Hars-
ton titles. A publication was made giving notice of
the suit to these nonresidents. Some of the defend-
ants in that suit who were served in Missouri and
whose names appear filed answers. Others who were
served failed to answer. And none of the non-
residents named in the bill entered their appearance
and filed answer. All of the pleadings and proceed-
ings leading up to the decree and including it and
the appeal therefrom disclose that none of the non-
resident defendants, and especially the ones through
whom the Weirman and Harston titles run, entered
their appearance. A judgment was entered by the
circuit court in St. Louis where the case was tried
after a change of venue in favor of the plaintiffs
therein decreeing and divesting all right, title and
interest in the land out of the defendants. Certain
of the defendants therein, by name, filed motions for
a new trial which were overruled. The case was
appealed to the Supreme Court (121 Mo. 614, 26 S. W.
367) where the judgment was reversed and the cause
remanded.

The defendants herein contend that the grantors
of the plaintiff were barred by that decree of the
circuit court which was reversed by the Supreme
Court for the reason that the order of reversal would
only operate as to those defendants who actually ap-
pealed. This might be true if it were shown that such
grantors ever entered their appearance and became
bound by the decree of the circuit court at St. Louis.
But defendants contend that there was an appearance
in the suit begun in 1890 by the F. G. Oxley Stave
Company and others because the order entered by
the clerk as to one of the motions for a new trial
filed by an attorney for some of the defendants therein
who did answer, naming them, recited that the motion
was filed for those defendants "and other defend-
ants," and defendants argue that thereby all the

nonresident defendants, who, according to the decree therein, had defaulted, did enter their appearance; and that as such motion was overruled and only certain named defendants appealed and "other defendants" did not appeal from the order of the court overruling such motion, therefore the grantors in this chain of title are bound by the decree of the circuit court.

As to the Weirman title it will be noted that the publication and suit was brought against J. W. G. Weirman and not I. W. G. Weirman to whom the land had been previously deeded. But aside from that, we are unable to agree with defendants' contention that Weirman or Johnson entered their appearance merely on account of the recitation that "other defendants" had filed a motion for a new trial, and this because all the papers and proceedings including the solemn declaration in the decree itself discloses that neither Weirman nor Johnson ever entered an appearance in that case. They are therefore driven to the extremity of having us hold that that solemn entry, "and other defendants," contained in the clerk's entry on the motion for a new trial brings into court those parties whereas every other record shows them to have been absent.

It is held in the case of Mullins v. Rieger, 169 Mo. 521, 70 S. W. 4, that a general answer by the defendants without naming them cannot be made to include defendants who have not been duly brought into court by process and who have not specially entered their appearance. There were other defendants in our cases who were personally served. The only entry on which defendants can insist that Weirman and Johnson entered their appearance is the minute entry by the clerk made when the motions for new trial were filed by some of the defendants who were named therein. Besides, the case of F. G. Oxley Stave Co. v. Butler County and others, when it reached

the Supreme Court was reversed and remanded as to the appealing defendants.

Appellants cite the case of Clark v. Brotherhood of Locomotive Firemen, 99 Mo. App. 587, 74 S. W. 412; Rector and Kennerly v. Circuit Court for St. Louis County, 1 Mo. 607; Schell v. Leland, 45 Mo. l. c. 293; and Louthan v. Caldwell, 52 Mo. 121. Those cases do not sustain the appellants' contention as an examination of them shows there was an appearance actually entered by the parties in filing certain motions, and in some of the cases it is specifically pointed out that the motions were separately filed. These cases are far from being authority that a minute made by the clerk, under the facts with reference to the pleadings and proceedings as have been detailed in this case, would, by the recital therein of "and other defendants," enter the appearance of nonresident, defaulting defendants. We must therefore hold that so far as this record is concerned the plaintiff has established title to the trees that he seeks to enjoin the defendants from cutting.

Appellants' second contention is that the consent decree entered in the United States District Court did so bind the Brooklyn Cooperage Company, the Great Western Land Company, Heike and Donner and their privies and representatives as to make any paramount title that they acquired inure to the benefit of the appeallants herein.

It is well-settled law that if a general warranty deed conveying a fee simple title is made by a grantor when he in fact has no title or has a defective title and he subsequently acquires good title, the subsequently acquired title will inure to the benefit of the grantee in such deed. It is also well-settled that the grantor in an instrument other than one carrying a covenant of warranty will not on the acquisition by him of a paramount title be estopped from setting it up as against his grantee in a deed made prior

to the acquisition of the paramount title. [See White v. Davis, 50 Mo. 333; Gibson v. Chouteau's Heirs,. 39 Mo. 566; and Wilson v. Fisher, 172 Mo. 21, 23, 72 S. W. 665.]

It is therefore necessary to look to the consent decree which was entered by the United States District Court. If such decree can be construed so as to warrant title in the timber to the appellants, then the Brooklyn Cooperage Company and the Great Western Land Company when they acquired the Weirman and Harston titles would do so for the benefit of the appellants. On an examination, however, of the memoranda of compromise entered into between the parties leading up to the consent decree we find the following provision (in exhibit B): "With regard to the lands to be selected by H. D. Williams Cooperage Company, the complainants do not warrant the title to said land or the timber thereon, but the defendants and each of them shall and will protect and save harmless the complainants and each of them and their assigns from all claims by third persons for damages in excess of one and 50/100 dollars ($1.50) per cord, arising out of cutting done by the H. D. Williams Cooperage Company on the lands selected by it." And there is nothing in the decree that would indicate that the title to the timber which the appellants were permitted to cut was warranted to be in the Brooklyn Cooperage Company and Heike and Donner. This provision in the agreement on which the consent decree was entered disclosed that there was no warranty whatever made by the complainants in that suit as to the title of the land on which the timber was growing. We can therefore see no reason why the Brooklyn Cooperage Company and Heike and Donner or their grantees and representatives would not be permitted to buy the title to the land and enforce their rights under such acquired title if it was the paramount title. Certainly the Weirman heirs

and Mary J. Harston could have enforced such rights, and as the plaintiff either for himself or his principals bought the rights of those people, and there being no warranty out that would estop them, they or their privies would be entitled to set up such title against the appellants. The proof, however, shows that the timber was bought by the plaintiff himself, and whether he was guilty of a fraud on the corporations he represented in making them pay $4900 for the land without the timber when he paid only $700 for the timber which his bill alleges is the chief value of the land is not a question that can be taken advantage of by the defendants in this case; that is a matter between the principal and the agent. The subject-matter involved in the litigation settled by the consent decree was the rights of the parties as they existed on that date and not the rights as they exist in this suit because the subject-matter determining the rights in this suit depends upon the title acquired from the Weirmans and Mary J. Harston. And while the plaintiff in this case was the attorney and agent and general manager of those corporations and knew that the H. D. Williams Cooperage Company was given privileges under the consent decree, still he is not in his claim for the timber basing his right on any title or any claim that his principals owned when the consent decree was entered. He therefore was not estopped because neither the subject-matter nor the parties were involved in the suit terminating in the consent decree. It is said in the case of State ex rel. Kane v. Johnson, 123 Mo. 55, 27 S. W. 399: "The mere fact that he employed attorneys to defend that suit, who participated in its trial and the examination of witnesses ought not to estop him from now asserting his rights, as he claims nothing by, through or under them." Barron, the plaintiff, having acquired rights in this timber, not through his principals but from an outstanding title, would not be

estopped from enforcing the rights he acquired because his principals had been estopped on an entirely different source of title.

The foregoing discussion disposes of appellants' third contention.

We cannot agree with appellants' contention that injunction will not lie in this case. Section 2534, Revised Statutes 1909, expressly gives the remedy of injunction to one whose property, real or personal, is threatened with irreparable injury and to prevent the doing of any legal wrong when in the opinion of the court an adequate remedy cannot be afforded by an action for damages. The evidence in this case shows that the appellants were cutting this timber owned by the plaintiff and were threatening to cut it under the terms of the consent decree. It is also shown in evidence that this character of timber is of very slow growth, and also that it would require great expense to the plaintiff to watch the timber and keep an account of such as the defendants saw fit to cut. It is held in the case of Palmer v. Crisle, 92 Mo. App. 513, as follows: "The law of today does not require that a person in plaintiff's situation shall submit to the stripping of his timber-land of its forest trees, and then attempt to make his loss good by action for damages. The nature of the property involved and the inconvenience of suing for continuous trespasses, as charged in this case, constitute a basis for equitable relief, long recognized in this State under the statute governing the use of the writ of injunction." It is held that injunction is available to restrain repeated and continuous trespasses even though the wrong may not be irreparable and the wrongdoer may be solvent. [See Turner v. Stewart, 78 Mo. 480; Sills v. Goodyear, 80 Mo. App. l. c. 132; Lytle v. James, 98 Mo. App. 341, 73 S. W. 287; and Hobart-Lee Tie Co. v. Stone, 135 Mo. App. 438, 117 S. W. 604.] The case of Powell v. Canaday, 95 Mo. App. 713, 69 S. W. 686, cited by

appellants is not helpful here as it clearly appears in the opinion that plaintiff in that suit was basing his right to an injunction merely on an alleged possession. The opinion expressly states that he failed to show any paper title to the land and his evidence fell far short of establishing a title by possession; hence the temporary restraining order was dissolved.

Appellants complain of the overruling of an objection to a question put to Fred Dewey in a deposition as follows: "State who were the sole heirs of William S. Dewey, April 9, 1883." The objection was that the question called for a conclusion. The court overruled the objection by stating that "he does state the relations and I think it is competent." The question was asked after the deponent had testified that William S. Dewey died on May 16, 1881, and that he left two brothers and a sister surviving him, none of whom left any children surviving them. In plaintiff's proof of title, William S. Dewey was one of the persons through whom plaintiff sought to show his chain, and the deed made by Richard S. and Henry A. Dewey and Harriet D. Rogers dated December 3, 1885, to James J. Johnson conveying all the interest they had in and to the land therein described, conveyed the interest that the grantors therein acquired as the brothers and sister and heirs at law of William S. Dewey. The question called for a conclusion, but under the circumstances detailed the action of the court could not be held to be reversible error. In an equity case the admission or exclusion of evidence is rarely reversible error on appeal. [Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073.]

The plaintiff showed title to the timber from beginning with deeds from Butler county in 1869. The defendants claim rights to the timber through a deed from Butler county in 1899. There is nothing in this record divesting the title out of the grantees and their line beginning with the deed of 1869. We therefore

hold that the decree rendered by the trial court should be affirmed and it is so ordered. *Robertson, P. J.,* and *Sturgis, J.,* concur.